# CHARLESTON.

United States Coal, Iron & Manufacturing Company *v.* Randolph County Court.

Submitted June 11, 1893.—Decided November 11, 1893.

1. Taxes—Construction of Statutes—Assessment.

    Section 4, c. 35, Acts 1891, providing for the re-assessment of lands, where it mentions coal privileges or interests held by a party or parties or any company or association exclusive of the surface, and providing for a separate assessment of the surface and coal privilege or interest, in using the word "held" meant and intended "owned" by such party or parties or any company or association.

2. Taxes—Construction of Statutes—Assessment.

    Where either the surface or the coal or mineral underlying the same is leased to a party, it is the duty of the commissioner in reassessing the land under chapter 36 of the Acts of 1891, to assess such land and coal to the owner thereof.

3. Taxes—Construction of Statutes—Assessment.

    Where a stratum of coal underlies a tract of land, and the

owner thereof sells and conveys the coal underlying his land, it is the duty of the commissioner in reassessing said land under chapter 36 of the Acts of 1891, to assess the coal separately from the surface, charging the surface and coal to their respective owners.

L. D. STRADER and DAYTON & DAYTON, for plaintiff in error cited 27 W. Va. 785; Section 94, chapter 161, Acts 1882; 28 W. Va. 264; 36 W. Va. 341; Section 3 Article 8, Constitution W. Va; Chapter 36, Acts of 1891.

ENGLISH, JUDGE:

In the month of September, 1892, the United States Coal, Iron & Manufacturing Company applied to the County Court of Randolph county to have certain coal-rights held by it as assignee of certain leases or contracts stricken from the assessment-books as improperly charged against it, and as improperly assessable. The petition was predicated upon the following facts:

In the year 1872 one Isaac Carpenter by contract took from Crawford Scott and several others the right to mine the coal from several different tracts of land aggregating one thousand one hundred and fifty one acres, all of which contracts were identical in the conditions and provisions contained therein, leasing to the party of the second part all of the coal and veins of coal in, under and upon said respective tracts of land with the right of entering upon said land and boring and exploring for said veins, and also the right to cut timber from the said lands for mining purposes, for such term of years as should be required to mine and remove all the merchantable and marketable coal under and upon said tracts of land which could be mined and taken out without extraordinary expense and outlay;—and for all coal mined and taken out under said leases the parties of the first part should be paid at the rate of ten cents per ton for each and every two thousand four hundred pounds semi-annually on the 1st day of January and July in each year;—and in case no coal should be mined under said lease for the term of ten years from the date thereof the party of the second part might, at his or their option, declare the terms of said leases at an end, and surrender the same to the party of the first part, but

after the expiration of the said ten years the said party of the second part should pay for five hundred tons of coal annually, whether any coal was mined or not, as long as said respective leases continued in force;—and in case any coal should be paid for under that clause, before any coal should have been mined and removed, said party of the second part, his assigns *etc.*, might mine and remove all coal so paid for and not mined during any subsequent year or years while said leases continued without any charge therefor, *etc.;*—all of which leases were assigned and conveyed by said Isaac Carpenter to said United States Coal, Iron & Manufacturing Company, and said company had no other interest than such as was conveyed to it by said Carpenter; and said County Court held, upon construction of said agreements, that said coal privileges or rights were properly assessable to said petitioner, although not before assessed as separate interests, and refused to strike the same off the assessment books, to which action of the court the petitioner excepted and applied for and obtained an appeal to the Circuit Court of said county, and upon a hearing the said petition and appeal were dismissed; and the said company applied for and obtained this writ of error.

A copy of one of said agreements was exhibited with said petition, and, as before stated, it was agreed that said agreements were identical. An examination of this agreement, which was executory, and under which nothing appears to have been done (although more than twenty years have elapsed since it was made) shows that it was not under seal; and our statute (Code, § 1, c. 71) provides that no estate of inheritance or freehold or for a term of more than five years in lands shall be conveyed unless by deed or will, *etc.*

In this case, however, an attempt seems to have been made to confer upon the grantee the right for an indefinite time to mine and remove the coal underlying these lands, and, although nearly twenty years had elapsed, at the time this attempted assessment was made, without anything having been done by the party of the second part or his assignee in compliance with its terms, yet said company

was assessed as being the holder of a coal-privilege or interest in said lands. It is apparent from the face of said agreement, that it was contemplated, that it should continue for more than ten years; for it is provided, that, in case no coal should be mined under said lease for the term of ten years from its date, the party of the second part might at his or their option declare the terms of said lease at an end and surrender the same; but that after the expiration of said ten years said lessee should pay for five hundred tons of coal annually, whether the same should be mined or not.

In view of the statute, then, can we say, that, when this assessment was attempted to be made, in the year 1892, the plaintiff in error was the holder of any coal-interest in said lands, or that it was properly assessed as such? At best these contracts could only be regarded as leases of the mineral rights under the respective tracts of land, not under seal, for a term of more than five years, in direct contravention of the statute, which provides that "no estate of inheritance or freehold or for a term of more than five years in lands shall be conveyed unless by deed or will;" and, more than ten years having elapsed since the date of said contracts, the plaintiff in error might at his option declare the terms of the lease at an end, and surrender the same to the party of the first part.

If the plaintiff in error should seek to enforce the right to mine and remove the coal from said lands in pursuance of the terms of said contract, it might be met and defeated upon the ground that the contract was not under seal, and more than five years had elapsed since the execution of said contract; and should the party of the first part seek to enforce the terms of said contract against the plaintiff in error, it might be met and defeated by the fact that the party of the second part had the right, after the lapse of ten years, to declare the terms of the lease at an end, and surrender the same to the party of the first part.

At the time, then, this assessment was sought to be made it could not be said that the plaintiff in error held any coal or mineral right in said lands, which could be enforced by it in a court of law; and, more than ten years having

elapsed since the date of said contract, the fair presumption would be, that the plaintiff in error had availed itself of the provision contained in said contract and declared the term of said lease at an end and surrendered the same to the party of the first part; but, if such was not the case, and the lease was a valid one in all respects and in full force and effect, our construction of section 4, c. 36, of the Acts of 1891 is that in the language: "When mineral, mineral water, oil, gas or coal privileges or interests are held by a party or parties, or any company or association, exclusive of the surface, the same shall be assessed separately to such party or parties, company or association, at its cash or market value at the time of such re-valuation"—the word "held" does not contemplate the holding of a lessee who pays a royalty for the coal mined and removed to the land-owner, the title remaining in the lessor, but it does contemplate a case in which another party has become the owner of the mineral or coal and holds it as such owner.

It is frequently the case that the mineral and coal in a tract of land are held by one party while the surface is held and owned by another, and it is when this is the case that the mineral and coal shall be assessed separately. The owner of the land owns it from the center of the earth to the heavens, and the coal is but a part of the land, and if a man rents a part of his land the law does not require the lessee to be assessed with the taxes on the portion leased, but the assesssment is made to the owner.

That section 4, c. 36, of the Acts of 1891, in providing for the re-assessment of lands, in speaking of coal privileges or interests held by a party or company exclusive of the surface, meant and intended coal-privileges or interests owned by such party or company, is apparent from the context, for the same section provides that the commissioner, in order to assist him in ascertaining and fixing the value of said lands and mineral, shall, when practicable, examine the owner of said lands, not the lessee, under oath, *etc.*

Section 8, c. 29, of the Code provides that the clerk of the County Court, in making out the land-books, shall correct errors and mistakes, which he may discover in any such land-books, as to the names of persons properly charge-

able with taxes on any tract or lot of land entered therein, and enter and charge the same with taxes thereon to the person or persons properly chargeable therewith, whether such correction be rendered necessary by the conveyance of such tract or lot by the person last charged with taxes thereon or otherwise; and section 25 of the same chapter provides that "when a tract or lot of land becomes the property of different owners in several parcels, or one person becomes the owner of the surface and another of the minerals under the same, the assessor shall divide the value at which the whole had before been assessed among the different owners having regard to the value of each interest compared with that of the whole," *etc.* This section is a part of the chapter which provides for the asssessment of taxes generally, and is not repealed by chapter 36 of the Acts of 1891, which provides for the re-assessment of lands, and being read in connection with said chapter of the Acts of 1891 shows that the word "held," as used in section 4 of said last-named chapter, was to be construed as if the word "owned" had been used in its place.

For these reasons my conclusion is that the Circuit Court erred in refusing the plaintiff in error the relief prayed for in its petition, and in dismissing its appeal. The judgment complained of is therefore reversed, and the cause is remanded to the Circuit Court of Randolph county for further proceedings to be had therein, with costs to the plaintiff in error.