# CHARLESTON.

CHARLESTON & S. BRIDGE CO. *v.* KANAWHA COUNTY COURT.

Submitted February 4, 1896—Decided March 21, 1896.

1.  CONSTITUTIONAL LAW—TOLL BRIDGES AND FERRIES—ASSESS-
    MENT OF TAXES.

    Section 63 of chapter 29 of the Code, which provides that the
    assessment of toll bridges and ferries shall be made by the asses-
    sor by ascertaining the annual value, and multiplying such annu-
    al value by ten, is not unconstitutional, under the provision of
    section 1 of article X of the Constitution, which provides that
    taxation shall be equal and uniform throughout the state, and all
    property, real and personal, shall be taxed in proportion to its
    value, to be ascertained as directed by law.

2.  CONSTITUTIONAL LAW—ASSESSMENT OF TAXES—UNIFORMITY OF
    ASSESSMENTS.

    The legislature has power to prescribe the method by which
    the valuation of any class of property may be ascertained, and,
    where the value of the same class of property is ascertained
    throughout the state in the same manner, such valuation can not
    be regarded as unconstitutional for lack of uniformity or equal-
    ity.

3.  CONSTITUTIONAL LAW—TAXATION OF PROPERTY—UNIFORMITY
    OF ASSESSMENTS.

    The Constitution prescribes what property is to be taxed, and
    the legislature prescribes the manner in which it shall be taxed,
    which mode of taxation shall be equal and uniform as to all
    classes of property.

4.  CONSTITUTIONAL LAW—UNIFORMITY OF TAXATION.

    A tax upon all business of the same class, which is uniform as
    to that kind of business, is not unconstitutional.

5.  CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES.

    Where the meaning of the Constitution is clear, the court, if
    possible, must give the statute such a construction as will enable
    it to have effect. It is always to be presumed that the legislature
    designed the statute to take effect, and not to be a nullity.

6.  TOLL BRIDGES—ASSESSMENT OF TAXES—COUNTY COURT—CIR-
    CUIT COURT.

    Where the valuation of a toll bridge for taxation has been fixed
    by the assessor as provided for in section 63 of chapter 29 of the
    Code, neither the county court, on application to correct such as-
    sessment, nor the circuit court, upon appeal from the refusal of

the county court to make such correction, can correct and fix the valuation of such toll bridge by taking the opinion of witnesses as to what would be a reasonable valuation of such toll bridge for taxation.

7. TOLL BRIDGES—JURISDICTION OF COURT OF APPEALS.

This court has jurisdiction, on writ of error from the judgment of the circuit court on such an appeal, to review the same, in a case of this character.

8. TOLL BRIDGES—ASSESSMENT OF TAXES.

Section 63 of chapter 29 of the Code provides for the assessment of toll bridges, which includes the franchises of toll bridges under the last clause of section 1, article X, of the Constitution, and provides for ascertaining the yearly value of a toll bridge. The value for taxation under that section is estimated from the earnings. It does not provide for assessing the real estate belonging to the bridge separately, and for that reason the legislature required the assessment to be placed on the personal property books.

ATTORNEY-GENERAL T. S. RILEY for plaintiff in error, cited Code, c. 29, s. 63; 39 W. Va. 142, 144; 36 W. Va. 201, 342; 38 W. Va. 125; 32 W. Va. 348, 353; Const. Art. X, s. 1.

A. C. BLAIR, PROSECUTING ATTORNEY for Kanawha county, for plaintiff in error, cited Code, c. 135; Id. c. 29, ss. 63, 68, 94; Id. c. 39; Id. c. 39, s. 49; 1 Bond (U. S.) 154; 14 How. Pr. 517; Bouv. Dict. 277, 280; 122 Mass. 8-12; Eng. Enc. "Jud. Act" 173; 56 L. T. R. (N. S.) 464.

W. S. LAIDLEY for plaintiff in error, cited 1 Desty, Tax. 84, 91, 493-4-5, 542, 603; Cooley, Tax. 551-52; Bur. Tax. 243; Shear. & Redf. Neg. § 156-69; Welty, Law of Assessments, § 25, notes; 26 W. Va. 534, 829; 20 Vt. 643; 29 Me. 196, 202-3; 48 N. Y. 93-105; 83 Cal. 447; 39 Am. St. Rep. 575; 21 Pick. 382-4; 25 Am. & Eng. Enc. Law, 236, § 5, note 2; 36 W. Va. 341; 39 W. Va. 142-47, 504-5; Code, c. 29, ss. 50, 63, 68, 94; 4 Wall. 657, 672; 38 Miss. 489, 652, 761; Elliott, Appel. Proc. 110-112; Const. Art. X, s. 1; 104 Ill. 21; 47 Mo. 462; 24 Vt. 9; 34 Vt. 352; 64 N. H. 162; 111 U. S. 701; 35 N. Y. 238; 48 N. Y. 514; 49 N. Y. 243; Vanfleet, Col. Attack, 867; 44 Cal. 323; 24 Mich. 262; 50 Mo. 134, 127, 167; 92 N. Y. 604; 15 Or. 342; Code, c. 135; 92 U S. 575; 23 Gratt. 464; 118 Mass. 386; 73 Pa. St. 373; 115 U.

S. 321, 338; 127 Ill. 201; 145 Pa. St. 147; 87 Am. Dec. 358; 2 Or. 146; 45 Mich. 431; 98 Mass. 21; Cooley, Tax. 111; Cooley, Const. Lim. s. p. 41; 89 Ga. 639; 142 U. S. 339, 354; 134 Ill. 557; 124 Ill. 666; 47 Iowa, 196; 7 Kan. 210; 19 Kan. 234, 307; 45 Ohio St. 632; 37 Ohio St. 571; 55 Mo. 378; 8 Heisk. (Tenn.) 663; 2 Nev. 86; 57 Wis. 137; 44 Md. 134, syl. pt. 8; 32 La. Ann. 82; 21 S. E. Rep. (Va.) 357; Desty Courts, 498, 589.

Brown, Jackson & Knight for defendant in error, cited Const. Art. X, s. 1; Code, c. 29, ss. 63, 94, 95, 96, 97; 38, W. Va. 341, 342, 343; 28 W. Va. 264, 266; 34 Mich. 59; Const. Art. VIII, s. 12; 39 W. Va. 142, 179; 40 W. Va. 222; 135 U. S. 467; 18 Ohio, 56; 15 Pick. 234; 5 Mich. 225; 1 Hemp. 195; 19 W. Va. 435; 9 Wis. 420; 13 Fed. Rep. 735.

English, Judge:

On the 6th day of April, 1894, the Charleston & Southside Bridge Company presented its petition to the County Court of Kanawha county, praying for the correction of an erroneous assessment of its bridge for the year 1893, claiming that for the year 1892 its bridge was assessed at twenty two thousand dollars, and that the same property for the year 1893 was assessed upon the personal property books of said county at fifty thousand dollars; the said assessment was very unjust, excessive, and unequal valuation, and that the same should be reduced to the said valuation of twenty two thousand dollars for the year 1892; also claiming that said bridge was real estate, and should have been entered and charged on the land books, instead of on the personal property books, of the county; that only a part of said bridge is in the city of Charleston, or Charleston district, the residue thereof being in Loudon district—and praying that the assessment of said bridge [for the 'year 1893 be corrected, and reduced to the valuation for the year 1892, and, when corrected, that the same might be entered upon the land books of the county for the year 1893, or if, for any reason, the same could not be entered for the year 1893 upon the land books, that it might be directed to be so entered on the land books for 1894, and charged back for the year

1893, and that in that event all taxes against petitioner on the personal property book for the year 1893 be released, and discharged.

On the 31st day of July, 1894, the petition having been filed, and the prosecuting attorney being present, the court, having heard the evidence adduced, and the arguments of counsel, dismissed said petition; and the petitioner, desiring to appeal from said decision, excepted to the opinion of the court, and took a bill of exceptions.

On the 16th day of February, 1895, the case was heard in the Circuit Court of Kanawha county upon the transcript of the record of the proceedings had before said county court, and was argued by counsel for the applicant, the Charleston & Southside Bridge Company, and by the prosecuting attorney of said county, representing the state, county, and districts, on consideration whereof said circuit court held that the judgment of the county court entered on the 31st day of July, 1894, refusing the applicant all relief prayed for in its petition, and dismissing said petition, was erroneous, and the same was reversed and set aside; and the court corrected and changed the valuation of applicant's bridge upon the personal property books for the year 1893 from fifty thousand dollars to twenty five thousand dollars, and fixed the valuation of said bridge at the sum of twenty five thousand dollars, and held that the bridge of said applicant was real estate, and should be entered and charged on the land books of said county, instead of the personal property books, and directed that said bridge be entered and assessed for taxation on the land books of said county for the year 1895 at the valuation so fixed by the court; and from this judgment the state of West Virginia, the county court of Kanawha county, and the district of Charleston obtained this writ of error.

The first question we encounter in examining this record is the question of jurisdiction. It is insisted by counsel for the defendant in error that under the provisions of section 94 of chapter 29 of the Code a party aggrieved by an assessment is given the right to apply for relief to the county court, and to appeal to the circuit court if the county court decides against the application, and that no pro-

vision is made for any appeal or action beyond the circuit court. When, however, we look to the language of the statute, we find it reads thus: "If the court, upon an application to correct an assessment under any of the provisions of this chapter refuse to make the correction asked for, the applicant may have the evidence taken therein, certified by the county court and an appeal may be taken as in other cases from the order of refusal to the circuit court of the county," *etc.* The first clause of the section provides that "any person claiming to be aggrieved by an entry in the land or personal property books of any county * * * may within one year after the verification of such book * * * apply for relief to the county court of the county in which such books were made out; but he shall before such application is heard give reasonable notice to the prosecuting attorney of the county, whose duty it shall be to attend to the interest of the state, county and district in the matter." Now, if this notice was omitted, and no opportunity afforded the state, county, and district to be thus represented in the matter, no one would contend that a correction of an assessment, in the absence of notice to the prosecuting attorney, would be valid. So it is perceived that when the application is made to the county court for the correction the statute provides that the interest of the state, county, and district shall be represented by the law officer of the state and county. He appears for them, and sees that their interests are protected, and they thus become parties to the proceeding. Again, when we look to the record, we find that the final order made in the circuit court shows that the prosecuting attorney appeared and argued the case, representing the state, county and district. Here we have the applicant, on the one hand, seeking to reduce the assessment of its property, claiming that it has been erroneously assessed, and the state, county, and district, on the other hand, resisting said reduction. All the elements of a suit are present, and the amount in controversy, is more than sufficient to confer jurisdiction upon this Court.

As to the question raised in reference to the county court being a party to the appeal, our statute (section 4 of

chapter 39 of the Code) provides that the "real and personal estate, rights, interests and privileges, in relation to the real or personal estate, claims and rights of action heretofore belonging to any county, or held in trust for, or for the use of such county or its inhabitants, are hereby transferred to and vested in the county court thereof as such corporation;" and while it may be true that the county court, as a court, could not properly obtain a writ of error from a judgment of the circuit court, which has passed upon and reversed the action of such county court, yet the county court, in its representative capacity, representing the rights interests and privileges of the county, under said section 4, might obtain such writ.    At the date of the decision in the case of *Low* v. *County Ct.*, reported in 27 W. Va. 785, which was handed down in March, 1886, there was no statute authorizing an appeal from the action of the county court in correcting an erroneous assessment of lands.    It is so stated in the opinion, and it was there held that the remedy was by *certiorari*.    In the case of *Pittsburg, C. & St. L. Ry. Co.* v. *Board of Public Works*, 28 W. Va. 264, this Court held that under our Constitution the Supreme Court of Appeals of the state has no power to review, by writ of error, or appeal, the decisions or orders of inferior tribunals or officers as to matters which are simply administrative, executive, or legislative, and not strictly judicial in their nature, except where such power may be expressly conferred by the Constitution.

The question then, which presents itself for determination, is as to the character of the action of the circuit court which is complained of.    Was it administrative or executive ?    In order that we may examine this question properly, let us inquire what was done.    The county court refused to correct the assessment, and the matter was appealed to the circuit court; and in that court, on one side, we find the Charleston & Southside Bridge Company, and on the other the state, county and district, represented by their respective attorneys, arrayed against each other.    And while it is true that our Constitution (article VIII, s. 24) in defining the jurisdiction and powers of the county court, expressly says that they "may exercise such other powers

and perform such other duties not of a judicial nature as may be prescribed by law," yet when the consideration of this matter was transferred by appeal into the circuit court which the statute expressly authorizes, it came then into a forum that could entertain and determine questions of a judicial nature. The county court had dismissed the application of the petitioner; being of opinion, as is shown by the bill of exceptions, that the assessment of the bridge of the applicant for taxation was controlled exclusively by the provisions of section 63 of chapter 29 of the Code. And no evidence being offered, or facts proved, to show that the said assessment for the year 1893 was erroneous, under the provisions of said section, and the court declining to pass upon the constitutionality of said section, as it deemed it improper to do so, the case was appealed, as before stated, to the circuit court, which court, after hearing the arguments, reversed the judgment of the county court, corrected and changed the valuation of applicant's bridge upon the personal property books for the year 1893 from fifty thousand dollars to twenty five thousand dollars, fixing the valuation of said bridge at twenty five thousand dollars and directed that said bridge be entered and assessed for taxation on the land books of said county for the year 1895 at the valuation of twenty five thousand dollars. This action of the circuit court could not be regarded as merely executive or ministerial. Webster, in defining "executive," says : "In government, 'executive' is distinguished from 'legislative' and 'judicial'; 'executive' being applied to that which carries the laws into effect, or secures their due performance." The judgment complained of did carry the statute into effect, as it appears on the statute book. Neither was it merely ministerial; pursuing the directions of the statute. The manner of ascertaining the valuation of a toll bridge is plainly prescribed in section 63 of chapter 29 of the Code. The assessor is thereby required to ascertain a just estimate of its annual value, and, for the purposes of taxation, said statute provides that the value of a toll bridge or a ferry shall be taken to be ten times its annual value. This application was to correct the assessment of this bridge at fifty thousand dollars, yet, so far as the transcript and bi l

of exceptions show, no witness was offered to prove the annual value of said bridge; and the bill of exceptions certifies all of the facts proved, and further certifies that no evidence was offered or facts proved by the applicant to show that the said assessment of the said bridge for the year 1893 was erroneous. We must presume, upon an application of this character, where the object was to correct the valuation or assessment by reducing it, that if the annual value was below five thousand dollars the fact would have been proven. And the bill of exceptions, disclosing the further fact that the applicant sought to reduce said assessment by taking the opinion of various witnesses as to what they considered a fair assessment for taxation, three of whom fixed a fair valuation of the same for taxation at twenty five thousand dollars, which was the amount the circuit court fixed in its judgment, shows conclusively that this amount was not arrived at in the manner prescribed by section 63 of chapter 29 of the Code. No witness that was introduced stated that the annual value of said bridge was two thousand five hundred dollars, yet the law is imperative that, for the purpose of taxation, the value of a toll bridge or ferry shall be taken to be ten times its annual value. We must then regard this judgment of the court in fixing the valuation of this bridge property upon the testimony introduced in the cause as a judicial act.

Returning again to the question of the jurisdiction of this Court: If there should be any doubt as to the right of the county court, representing the county, to obtain a writ of error, there can be none as to the right of the state to obtain such writ—and it joins in the petition—as Const. art. VIII. s. 3, provides that "in cases relating to the public revenue the right of appeal shall belong to the state." Counsel for the defendant in error, contending that this Court has no jurisdiction of this case, rely upon the case of *Upshur Co.* v. *Rich*, 135 U. S. 467 (10 Sup. Ct. 651). In that case it was held that an appeal, under a state law, from an assessment of taxes, to "a county court," which, in respect to such proceedings, acts, not as a judicial body, but as a board of commissioners, without judicial powers, only authorized to determine questions of quantity, proportion,

and value, is not a "suit" which can be removed from the county court into a circuit court of the United States, and be heard and determined there.   Justice Bradley, speaking for the court, after referring to the case of *Pittsburg, C. & St. L. Ry. Co.* v. *Board of Public Works,* 28 W. Va. 264, quoting from it, and concurring in the views expressed in the portion of the opinion quoted, says: "At the same time, we do not lose sight of the fact, presented by every day's experience, that the legality and constitutionality of taxes and assessments may be subjected to judicial examination in various ways—by an action against the collecting officer, by a bill of injunction, by *certiorari,* and by other modes of proceeding.   Then, indeed, a suit arises which may come within the cognizance of the federal courts, either by removal thereto, or by writ of error from this Court, according to the nature and circumstances of the case.   Even an appeal from an assessment, if referred to a court and jury, or merely to a court, to be proceeded in according to judicial methods, may become a suit within the act of congress."   The mode of proceeding on appeals from the county court is prescribed in section 14 of chapter 112 of the Code, which provides that "with the petition for the appeal there shall be a transcript of the record and proceedings in the county court, and the petition shall assign errors."   Section 94 of chapter 29 provides that an appeal may be taken from the refusal of the county court to correct an erroneous assessment, as in other cases.   Can this be regarded in any other light than an appeal to a court, to be proceeded in according to judicial methods? We think not.   Neither can we regard the action of the circuit court upon this appeal—in treating the provisions of section 63 of chapter 29 of the Code as a nullity, and totally disregarding it, in correcting the assessment and arriving at what he considered a correct valuation, and reversing the action of the county court in dismissing the petition of said applicant, and holding the action of the county court to be erroneous—in any other light than that of judicial action.   The state and county were parties to this controversy in the circuit court.   If a copy of the order allowing the appeal was not served upon them, it

should have been, under the provisions of section 14 of chapter 112 of the Code.  At any rate, they appeared by their attorney, and contested the right of the defendant in error to have the assessment of said property corrected, and thereby became parties to the controversy, and had a right under the provisions of section 1 of chapter 135, to obtain this writ of error.

In order to sustain the action of the circuit court in disregarding the plain provisions of section 63 of chapter 29 of Code, in arriving at the proper assessment of the bridge belonging to the Charleston Southside Bridge Company, counsel for the defendant in error contend that said section is unconstitutional, and was properly disregarded.  In what respect is said section unconstitutional ?  Article X, s. 1, of our Constitution provides that "taxation shall be equal and uniform throughout the state, and all property, real and personal, shall be taxed in proportion to its value, to be ascertained as directed by law"; and this section concludes as follows:  "the legislature shall have power to tax, by uniform and equal laws, all privileges and franchises of persons and corporations."   Section 63 of chapter 29 was passed in pursuance of this provision, having for its object the proper assessment of toll bridges and their franchises and privileges, and for that reason directs the assessor to ascertain the annual value, which would be unnecessary if the bridge itself was to be taxed as real estate.   This provision plainly confers upon the legislature the power of directing how the value of such franchises shall be ascertained, and to ascertain such value in any other mode than that directed by the legislature would surely be in violation of this constitutional provision, unless the mode prescribed by the statute should violate the clause requiring taxation to be equal and uniform throughout the state.   As we understand it, this means that the same species of property throughout the state should be assessed at the same rate, according to its value, which is to be ascertained as required by law; that is, all of the toll bridges (taking this case for illustration) throughout the state must be assessed, and their values ascertained by making a just estimate of the annual value of each, and multiplying it by ten.   This

mode has a tendency to produce uniformity in assessments of this kind of property, and also to place the burden of taxation on property in proportion to its producing value, and—Cooley, Tax'n, p. 15, says, "The amount of taxation may be determined by the value of the property, or its use, or its capacity, or its productiveness"—and to that extent would be uniform throughout the state, whereas, if assessments are to be based upon the opinions of individuals, as seems to have been done in this case, instead of being uniform and bearing equally upon property of the same character throughout the state, the assessments would be as shifting and variable as the opinions of men influenced oftentimes by local causes could possibly make them. In, Kentucky Railroad Tax Cases, 115 U. S. 321 (6 Sup. Ct. 57) the supreme court held that "a state law for the valuation of property, and the assessment of taxes thereon which provides for the classification of property subject to its provisions into different classes; which makes for one class one set of provisions as to modes and methods of ascertaining the value, and as to right of appeal, and different provisions for another class, as to those subjects; but which provides for the impartial application of the same means and methods to all constituents of each class, so that the law shall operate equally and uniformly on all persons in similar circumstances—denies to no person affected by it 'equal protection of the laws,' within the meaning of the fourteenth amendment to the Constitution of the United States." In the case of *Com.* v. *Brown* (recently decided by the court of appeals of Virginia) reported in 21 S. E. 357, it was held that "under Acts 1891–92, c. 363, p. 595, § 5, which requires oyster tongmen to make weekly returns of the amounts of their sales, and to pay a weekly tax on such sales equal to the rate collected by the state on other property, and authorizes them to pay two dollars, and thereby be relieved of making such returns, and imimposes a fine for failure to make returns if the two dollars are not paid, does not conflict with Const. Art. X, requiring taxation to be equal and uniform, merely because the value of the property is not ascertained in the same way as other property, and by the same officers, nor because the

tax is to be paid weekly, while other taxes were to be paid yearly, nor because a penalty was imposed for failure to observe the law which is not imposed in other tax laws." 1 Desty, Tax'n, p. 84, thus states the law: "Whether the power of the legislature was reasonably or unreasonably exercised; whether it was wise or unwise, expedient or inexpedient, to enact the law—are questions left exclusively to other departments of the state government to decide, and their judgment must necessarily be decisive upon these questions. So, if the power to apportion tax is unwisely exercised, the remedy is with the legislature. Although the state may provide modes for collecting its revenue that will seem harsh, unreasonable, and arbitrary, the judiciary can not indicate limits to the power of the sovereign in this regard, so long as its laws were general and impartial. * * * The remedy against unwise and unjust modes of taxation is to be sought from the legislative department, and not from the judiciary." Cooley on Taxation, under the title of "Assessment of Corporations"(page 273), says: "All corporations are taxable, when the state has not expressly relinquished the right to tax, by a stipulation in the charter; and the method of taxation, and what shall be taken as the measure of the tax, are in the discretion of the legislature." Again, on the question of uniformity and equality of taxation, we find that in State Railroad Tax Cases, reported in 92 U. S. 576, it is held in the fifth point of syllabus that, "while the constitution of the state of Illinois requires taxation, in general, to be uniform and equal, it declares, in express terms, that a large class of persons engaged in special pursuits, among whom are persons or corporations owning franchises and privileges, may be taxed, as the legislature shall determine, by a general law, uniform as to the class upon which it operates; and under this provision a statute is not unconstitutional which prescribes a different rule of taxation for railroad companies from that of individuals, nor does it violate any provision of the Constitution of the United States." In the case, also, of *Louisville & N. B. R. Co.* v. *State*, 25 Ind. 177, that court held, "The Constitution does not require a uniform method of valuation of property for taxation, but only such regulations as

shall secure a just valuation." In determining how this
end shall be secured, the legislature must exercise a discre-
tion; and, unless the method adopted be clearly inadequate
to secure the result, the courts can not interfere. So, also,
in the case of *Express Co.* v. *Seibert*, 142 U. S. 339 (12 Sup.
Ct. 250) the supreme court holds that the act of the legisla-
ture of Missouri of May 16, 1889, "To define express compa-
nies and to prescribe the mode of taxing the same and to
fix the rate of taxation thereon," imposes a tax only on
business done within the state, and does not violate the re-
quirements of uniformity and equality of taxation pre-
scribed by the constitution of Missouri. Again, in the case
of *People* v. *Mayor of Brooklyn*, 4 N. Y. 419, the court of
appeals of New York held that "a statute which authorizes
a municipal corporation to grade and improve streets, and
to assess the expense among the owners and occupants of
lands benefitted by the improvement, in proportion to the
amount of such benefit, is a constitutional and valid law";
also, that "the power to tax implies a power to apportion
the tax as the legislature shall see fit, and the power of ap-
portionment has no limit, where there is no constitutional
restraint." See *Railroad Co.* v. *Taylor*, 52 Wis. 37 (8 N.
W. 833)—a carefully considered case—where it is held that
"the legislature has power to prescribe, not only the prop-
erty to be taxed, but the rule by which it must be taxed,
and the only limitation of that power is that the rule shall
be uniform." See, also, *Weaver* v. *State*, 89 Ga. 639 (15 S.
E 840) which holds that a tax upon all business of the same
class, which is uniform as to that class of business, is not
unconstitutional. The presumption is in favor of the con-
stitutionality of a statute, and the courts should give the
statute effect, unless it is clearly unconstitutional. It was
so held in *Slack* v. *Jacob*, 8 W. Va. 612. The first point of
the syllabus in that case holds that "it is the duty of the
court to uphold a statute when the conflict between it and
the Constitution is not clear, and the implication which
must always exist, that no violation has been intended by
the legislature, may require it, in some cases, where the
meaning of the Constitution is in doubt, to lean in favor of
such a construction of the statute as might not at first view

seem most obvious and natural. Where the meaning of the Constitution is clear, the court, if possible, must give the statute such a construction as will enable it to have effect." (2) "It is always to be presumed that the legislature designed the statute to take effect, and not to be a nullity." (3) "Wherever an act of the legislature can be so construed and applied as to avoid a conflict with the Constitution, and give it the force of law, such construction will be adopted by the courts."

In the case of *Railway Co.* v. *Paull*, 39 W. Va. 142 (19 S. E. 551) this Court held section 67, chapter 29 of the Code, so far as it allows an appeal from the decision of the board of public works to the circuit court, constitutional and valid. And while that was a *mandamus* case, to compel the judge of the circuit court to entertain an appeal from an assessment made by the board of public works, the constitutionality of the act in question was discussed and passed upon. DENT, JUDGE, in speaking for the Court, in that case, upon the character of the action of assessors, quotes from Welty on the Law of Assessments (page 37, § 25) as follows: "In the exercise of the functions and in the discharge of the duties of his office, an assessor acts both judicially and ministerially; that is, some of his acts are judicial; and some ministerial. When it becomes necessary to determine a question of law or fact, the act is judicial. It may be safely stated that in no instance does an assessor perform all the acts necessary to perfect the assessment of a single person or item of property without the exercise of acts eminently judicial in their nature," *etc.* And after commenting upon this quotation he concludes as follows: "It being the duty of the legislature to direct by law how the true values of properties should be ascertained (an investigation strictly judicial in its nature) and the legislature having to provide tribunals to discharge this important function in a just and impartial manner, and having provided for the original valuation by a proper assessment tribunal, what better could be done than to allow the action of these tribunals, at the instance of any one personally aggrieved, to be reviewed by the circuit court—a judicial body already in existence, and fully equipped to

perform all necessary judicial functions. There can be but one conclusion in this case, and that is that it is not a question of doubt, but the law is in perfect accord with both the language and spirit of the constitution," *etc.* I may add with propriety, in this immediate connection, that it is immaterial whether the assessment is made by the board of public works, or by the assessor of a district, so far as the legal propriety of an appeal is concerned, or the character of the court's action upon an appeal may be defined. In both instances judicial action must be exercised. The legislature meant something when it required notice to be given to the prosecuting attorney when an application is made to the county court for relief from an erroneous assessment, and the statute plainly prescribes his duty when it says, "But he shall before any such application is heard give reasonable notice to the prosecuting attorney of the county whose duty it shall be to attend to the interest of the state, county and district in the matter." They were thus made parties to the controversy in the county court. And section 14 of chapter 112 provides than when an appeal shall be allowed from the county to the circuit court, "a copy of the order of allowance shall be served upon the opposite party." This brought them in as parties to the controversy in the circuit court, which, we have seen, was a judicial controversy; and, this controversy being decided against them in the circuit court, section 1 of chapter 135 of the Code confers jurisdiction upon this Court, upon proper application, to review the matter upon writ of error.

My conclusion, therefore, is that the circuit court erred in adopting a mode of ascertaining the value of the property of the Charleston & Southside Bridge Company in a manner different from that prescribed by section 63 of chapter 29 of the Code, and in placing said property upon the land books, instead of the personal property books, as required by section 68 of said chapter of the Code.

Our Constitution, in article X, s. 1, provides that "taxation shall be equal and uniform throughout the state, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as directed by law."

In pursuance of this constitutional provision, the legislature has, in section 63 of chapter 29 of the Code, provided the manner in which the assessments of toll bridges and ferries throughout the state shall be made, so that the assessment of that class of property shall be uniform. In doing this the legislature has acted as it had a right to do in pursuance of said provision, and in our opinion the legislature, in enacting said section 63, violated no provision of the Constitution, and toll bridges and ferries can only be legally assessed as therein prescribed.

For these reasons, and because said property was ordered to be placed upon the land books, in violation of the plain provisions of section 68 of said chapter, requiring such property to be placed on the personal property books, the judgment complained of must be reversed, with costs; and, this Court proceeding to render such judgment as should have been rendered by the circuit court, the appeal from the county court is dismissed, with costs, and the judgment of the county court is affirmed.

BRANNON, JUDGE :

I concur in the conclusion reached in this case, but do not intend thereby to concede a jurisdiction in this Court in purely tax assessment cases; but I think we have jurisdiction on account of the case involving the constitutionality of a law, and perhaps as involving the right of the county to lay taxes.

DENT, JUDGE :

I concur in the conclusion reached, but not in the opinion of JUDGE ENGLISH, in its entirety. In the case of *Pittsburg, C. & St. L. Ry. Co.* v. *Board of Public Works*, 28 W. Va. 264, it was held : "(1) The action of the circuit court in supervising the decision of the board of public works as to the assessment and valuation of railroad property for taxation under the provisions of chapter 52, Acts 1883, is merely administrative, and not judicial; the court acting in such case as an appellate assessment or tax tribunal, and exercising powers distinct from those belonging to it as a court or judicial tribunal, in the legal sense of the

term. (2) Under our Constitution, the Supreme Court of Appeals of the state has no power to review by writ of error or appeal the decisions or orders of inferior tribunals, officers, or boards, as to matters which are simply administrative, executive, or legislative, and not strictly judicial, in their nature, except where such power may be expressly conferred by the Constitution. (3) This Court has no jurisdiction to review by writ of error a decision of the circuit court correcting an order of the board of public works assessing and fixing the value of railroad property for taxation." This should be received and regarded as the settled law of this state. This law was apparently departed from in the case of *Bank of Bramwell* v. *Mercer Co. Ct.*, 36 W. Va. 341 (15 S. E. 78) but it is not mentioned in the syllabus; and the judgment of the circuit court was affirmed, which was equivalent, in effect, to the denial of the jurisdiction of the Court. What, therefore, is said about it in the opinion must be regarded as the mere *obiter dictum* of one member of the court. In the case of *U. S. Coal, Iron & Manuf'g Co.* v. *Randolph Co. Ct.*, 38 W. Va. 201 (18 S. E. 566) the question of jurisdiction was not raised or considered, and the Court simply held that the leases involved were not proper subjects for taxation under the law. In the case of *Mackin* v. *County Ct.*, 38 W. Va. 338 (18 S. E. 632) the question of jurisdiction was raised, but not settled; the case being dismissed for the reason that the county court was not a proper party, nor entitled to a writ of error. Judge Brannon, however, in no uncertain terms, held that this Court has no constitutional right, by writ of error, to review the decision of the circuit court while acting as a mere assessment tribunal. In the case of *Railway Co.* v. *Paull*, 39 W. Va. 142 (19 S. E. 551) the constitutional right of the legislature to impose on the circuit court the duty of acting as an appellate assessment tribunal was involved; and this Court decided in favor of legislative authority, and awarded a *mandamus* to compel the circuit court to exercise a jurisdiction it was refusing.

It is perfectly consonant with reason and authority that where the circuit court is acting in the capacity of a mere appellate ministerial assessment tribunal, in ascertaining

the true values of property for the purposes of taxation, its judgment is final, and cannot be reviewed by this Court. But it must ever be kept in mind that the circuit court is a tribunal of dual capacity. As a court, strictly speaking, it is a branch of the judicial department of the state engaged in determining legal controversies, and, as an appellate assessment tribunal, engaged in settling the values of property for taxation; in other words, discharging the duties of an assessor, judicial in their nature, and yet not appertaining or belonging to the judicial department. By reason of its double jurisdiction, its duties have become so intermingled that it is sometimes impossible for it to discharge its duties as an assessment tribunal without at the same time performing duties which belong to it strictly as a judicial tribunal. When acting as a mere assessment tribunal, in ascertaining the true value of property for the purposes of taxation, as matters incident thereto it can be called on to, and must, determine whether the property in controversy is the proper subject of taxation, whether the law under which it is proposed to be taxed is constitutional, and whether the inferior assessors are proceeding to tax it in the manner required by law. These incidental questions the owner of the property would have the right to have determined by bill of injunction to the tax levied, or by some other proper remedy to bring them to the attention of the same court in which his appeal is already pending. Is it then the duty of the court to refuse to determine these questions other than as a mere assessor, and put him to the expense and the legal farce of applying to the court by a different remedy to secure the reconsideration and reversal of its action when acting as an assessor? If the circuit court acted in a mere ministerial manner, as an assessor, in disregarding a law as unconstitutional, it could be compelled by *mandamus* to carry out the law strictly, —even by *mandamus* from itself as a court. No such absurdity was ever contemplated by the law or the Constitution. Therefore it seems plain that it was the intention of the legislature, when it imposed upon the circuit court the duty of acting as an appellate assessment tribunal, to also empower it, in its judicial capacity, to determine and set-

tle finally all such matters of judicial cognizance touching the matter of assessment as might be brought to its attention, as a court, in any other form of legal procedure, and thus at once secure the end of the litigation as well as of the assessment. Such being the law, a writ of error would properly lie to the judgment of the circuit court as to any question incidentally determined by it in assessment cases which might be brought to its attention as a court, strictly speaking, in any other manner of legal procedure, without first requiring the parties in interest to adopt such other mode of proceedure to question the legality of the decision of the circuit court before applying to this Court to have the same reviewed.

In Ordr. Const. Leg. 423, it is said: "The construction given to the statute of a state by the highest judicial tribunal of such state is regarded as part of the statute, and is as binding upon the courts as the original text. This necessity of surrendering the rectification of civil rights and remedies to courts, as equitable administrators of the will of the legislature, has been recognized and practiced in England from the earliest times." "Instead of the legislature framing new provisions as occasion has required," says Mr. Dwarries, " it has been left to able judges to invade its province, and to arrogate to themselves the lofty privilege of correcting abuses and introducing improvements. It certainly is a remarkable fact that the jurisdiction or method of proceeding in all our superior courts will be discovered, on inquiry, to be founded on usurpation, and sustained by fiction." The courts on the fiction that the common-law does so, always supply a remedy where there is a right. However this may be, it is undoubtedly true that it is the duty of the courts, in construing a legislative enactment, to provide, through ethical rules, founded on natural justice, for the unforseen effects of such enactment on the rights of the public and individuals. In giving an appeal from the assessor to the county court, and from thence to the circuit court, in cases of erroneous assessments it probably never occurred to the legislative mind to consider the effect that might result to the state or individuals from the judicial decision of matters incidental to such as-

sessment by the circuit court being a court of record of general judicial powers. If so, it might have limited the court's inquiry on such appeals to the ascertainment of the true value of the property for assessment purposes.

An assessor has no authority to decide an act unconstitutional, nor disobey it in any particular, and if he does so his action can be controlled by *mandamus*. *State* v. *Buchanan*, 24 W. Va. 376, 385. Nor has the county court such right, as an assessment tribunal. Then, if we limit the authority of the circuit court, in assessment appeals, to that of an assessment tribunal or assessor, as expressed in the the case of *Mackin* v. *County Court*, 38 W. Va. 346 (18 S. E. 632) such court would have no right, on the hearing of such appeals, to pass on the constutionality of an act of the legislature, or do anything other than what the assessor or the county court would have right to do. And if it did so, and held an act unconstitutional, it could be proceeded against by *mandamus* to compel it to obey the law, by prohibition to prevent it from exceeding its jurisdiction, or, being a court of record, by writ of error to ascertain whether it erroneously assumed jurisdiction of matters over which it, as a court of record, had no jurisdiction.

There can be no question but what a writ of error would lie to the judgment of the court, for the purpose of ascertaining whether it was erroneously exceeding its jurisdiction as a judicial court, in taking cognizance and disposing of a case, in a judicial capacity, which it only had the right to hear as an assessment tribunal, if it was possible or intended by the legislature that it should keep its judicial and ministerial functions entirely separate and distinct. So that it, as a judicial body, could compel itself, as a ministerial tribunal, to obey an act which it, as such ministerial tribunal, was disposed to disregard—an absurdity, as heretofore shown.

The conclusion is therefore reasonable and certain that, when the legislature imposes on a judicial body the duties of a ministerial tribunal, it does not intend that in the performance of such ministerial duties it shall allow its judicial functions to rest in abeyance, but it does intend that it shall fully decide, and settle finally, all judicial questions

that the controversy may present, without dismissing the parties to another court, or to a different form of legal procedure in the same court. So that the circuit court hears and determines a matter of erroneous assessment, in its dual capacity and appellate character, as fully and completely in all respects as it could possibly do in any and all forms of legal procedure in which the same question could be presented for its consideration and decision. While constituted an assessment tribunal, it is not required to divest itself of its judicial character, but it gives complete relief according to the nature of the controversy.

In the case under consideration the court not only acted as an assessment tribunal, and a judicial forum, but, disregarding the plainly constitutional enactments of the legislature, proceeded to enact and carry into execution a law of its own, not found in the Code. If section 63, chapter 29, Code, is unconstitutional, then there is no provision for the assessment of toll bridges and ferries, as they can not be deemed to be real estate, within the meaning of the assessment laws. They are public highways, intended for the public use. But, being costly and expensive, individuals who assume the duty of the public in constructing and preparing them for public use are permitted, as a remuneration for their services and capital invested, to collect tolls from the public for their use. This is a privilege and franchise they enjoy, as against the public, and which, under article X, s. 1, Const., the legislature has the right to tax. As to the capital invested in the bridge, or the bridge itself, being real estate, no taxes are levied. To ascertain the value of the franchise and privileges, the assessor is directed to make a just estimate of the annual value thereof, and multiply it by ten, thus allowing the bridge company to reap an annual harvest of ten *per cent.* on the assessed value of its investment. In ten years its income would equal the assessed value. The company prefers it to do so in five years. This is a question that addresses itself to the legislature solely. If the company wants its percentage of increase, compared with its assessed value, made twenty instead of ten *per cent.*, the proper place is to apply to the legislature, and not to the courts, so that all similar prop-

erty in the state may be assessed alike. This will produce the uniformity required by the Constitution. If assessed as real estate, ten times the annual rental would be a fair assessment. At least, it would be an indication of its fair market value, as at the present time few investments are paying ten *per cent.* But this is *obiter.*

The law is constitutional, and the circuit court erred in disregarding it. What remedy, then, has the state, county and district, whose interests are involved? Shall it be by *mandamus?* It lies if the court was merely acting as an assessment tribunal. Shall it be by prohibition? A mere assessment tribunal can not entertain questions of constitutional law. Shall it be by writ of error? A judicial body, in its judicial capacity, can not entertain an appeal in an assessment controversy, and hold the act under which the assessment was made unconstitutional, unless authorized so to do by law. And if the law authorizes it to act in its judicial capacity, and so to determine, its judgment is final and *res adjudicata* between the parties, and (being a court of record) can only be reviewed by writ of error to this court. And this the law must give, as all other legal remedies are taken away by the adjudication of a competent tribunal. In the case of *State* v. *Buchanan, supra,* it is held that an assessor, being a ministerial officer, can not pass on the validity of a statute, but "its constitutionality can only be tested when, in its execution, it operates upon the citizen whose right it is to appeal to the court, and, by the proper proceeding, have it decided whether the property claimed by him as exempt * * * is liable to be assessed. If that court should decide against him, he could then appeal to the supreme court of appeals, which court would either sustain * * * the law or pronounce it unconstitutional." In Ordr. Const. Leg. 413, 414, in commenting on judicial legislation, by the court, the author says; "The necessity, also, for the exercise of an administrative jurisdiction by them, is further increased through the creation by statute of *quasi* judicial boards of officers. such as tax assessors, highway, school and excise commissioners, and other similar bodies, whose functions authorize them to act ministerially upon the rights of persons or

property, according to a judicial discretion attaching itself
to their office. It is from the peculiar nature of the func-
tions discharged by such bodies that the duty has devolved
upon courts of exercising some supervisory authority over
boards of officers possessing their wide and expansive pow-
ers. Indeed, but for this they would be wholly irresponsi-
ble to any directory power for any abuse of their own.
Controlling as they do either the sources of financial sup-
port of communities, or the expenditures of their revenues
they are liable to err at times in the exercise of an arbi-
trary discretion which needs to be checked. Experience
having everywhere established this fact, it is now well set-
tled that the right of courts, whether intermediate or ap-
pellate, to review the acts of such bodies under the com-
mon-law writ of *certiorari*, may be considered as a rule of
general practice throughout the United States; for, inde-
pendently of statute, it is the only method by which the cit-
izen can obtain redress against either illegal taxation, or
other forms of encroachment upon his civil rights." This
was held to be the law in the case of *People* v. *Board of As-
sessors of City of Brooklyn*, 39 N. Y. 81; 4 Enc. Pl. & Prac.
115.

As declaratory of this rule of the common-law, section
12, art. VIII, of our Constitution, expressly provides that
"the circuit court shall have the supervision and control
of all proceedings before justices and other inferior tribu-
nals by *mandamus* prohibition and *certiorari*." In the case
of *Low* v. *County Ct.*, 27 W. Va. 785, it is intimated, but
not expressly decided, that *certiorari* was the proper reme-
dy to review the decisions of the county court in assess-
ment cases. There is no question but that it was the prop-
er remedy, by common, statute, and constitutional law; and
the only plausible reason why the court hesitated so to de-
cide was the natural modesty of its members, superinduced
by fear of committing a blunder. If *certiorari* was the prop-
er remedy, it became the duty of the circuit court not
only to inquire into questions of jurisdiction and irregular-
ity, but all questions of error of fact and law presented in
the case, except the ascertainment of the assessable value
of the property in controversy. And, if the circuit

court erred, this Court would review its judgment by writ of error, under section 3, art. VIII, Const. *Board* v. *Hopkins*, 19 W. Va. 84.

Now, the question presents itself, has the legislature, by granting the right of appeal to the circuit court in assessment controversies, destroyed or taken away the tax-payer's right to an injunction, and his right to a *certiorari*, and limited the appellate jurisdiction of this Court? In attempting to facilitate and simplify the remedy of a tax-payer erroneously assessed, has it done him an irretrievable injury? Or shall it be said that the right of review by *certiorari*, notwithstanding the right of appeal granted, still remains, and, notwithstanding the final judgment of the circuit court having jurisdiction of and settling legal principles, such judgment may be reviewed by injunction? Are we to have the anomalous proceeding of three distinct remedies, presenting the same identical questions of law pending in the same court at one time, the decision in one of which cases settles the questions of law finally, in another allows a writ of error to this Court, and in the third allows an appeal? Is it not better to hold that the appeal granted, while it allows the circuit court the additional ministerial power of fixing the true value of property for the purpose of taxation, is also a substitute for the writ of *certiorari*, as it presents the same legal questions, and that a final judgment therein may be reviewed by writ of error to this Court in the same manner, and to the same extent, as though it were a case of *certiorari*.

The ascertainment of values for assessment purposes is a judicial function, strictly belonging to the legislative or administrative branch of the state government, and not subject to review in this Court; but when an alleged erroneous assessment is carried by appeal into the circuit court, it becomes a *quasi* civil suit, with all the usual indicia thereof, to be heard *de novo* in such court. And, when it involves the constitutional and legal rights of the state and individuals, the court, in its general judicial capacity, must dispose of them judicially, and not merely ministerially, as such questions come within its constitutional jurisdiction, and as to the disposal of them it cannot be con-

sidered a mere assessor. In the circuit court, as the fore-seen or unforeseen effect of constitutional legislation, two jurisdictions are commingled; but this Court separates them, and rejects the one, and takes cognizance of the other, as properly subject to its appellate supervision.

My conclusion, therefore, is that the circuit court, in the full exercise of its constitutional powers in the hearing and determination of appeals in assessment cases, necessarily acts in a dual or twofold capacity, to wit: (1) As an appellate assessment tribunal, representing the administrative branch of the state government, in ascertaining and fixing the true assessable value of the property in controversy; and its judgment, to this extent, is final, and not subject to review. (2) As a judicial court of record, representative of the judicial branch of the state goverument, in so far as it is called upon to hear and determine questions of legal and constitutional rights as between the state and individuals; and to this extent its judgments are subject to the appellate jurisdiction of this Court by writ of error, and it can not be controlled in its decision therein by writ of *mandamus.*

This conclusion renders harmonious and consistent all the former decisions of this Court in assessment cases, even including the disapproved syllabus properly modified in the case of *Low* v. *County Ct.* except that it limits the too broad doctrine enunciated in the case of *Pittsburg, C. & St. L. Ry. Co.* v. *Board of Public Works,* to the extent that such opinion ignores the dual character of the circuit court, and permits the imposition upon such court of administrative duties to entirely supersede and divest its judicial functions. And while this conclusion totally refutes the erroneous theory that, because the strictly legislative or administrative functions of ascertaining tax valuations is judicial in its nature, this Court can be converted into an appellate assessment tribunal, it recognizes the proper constitutional powers of this Court, as the supreme head of the judicial branch of our tripartite system in government. May such system, in purity and sanctity, remain perpetual until the governments of man burn as stubble, and, purified as with fire, give place to and become the universal and everlasting kingdom of the living and eternal God.