COCHRAN COAL & COKE COMPANY *et al v*. BOARD OF EQUALIZATION AND REVIEW OF MONONGALIA COUNTY

(No. 6988)

Submitted May 20, 1931. Decided June 2, 1931.

*Stewart & Stewart* and *Martin & Seibert,* for plaintiffs in error.

*Albert Shuman* and *John T. Simms,* for defendant in error.

HATCHER, JUDGE:

The assessor of Monongalia County assessed the lands of the Cochran Coal & Coke Company for taxation in 1930 at $2,740,600. The Cochran Company and its lessee, Connellsville By-Product Corporation, protested this assessment before the Board of Equalization and presented evidence tending to prove that the actual value of its property for that year was only $2,028,736.99. The Board approved the valuation of the assessor. On appeal to the circuit court the action of the Board was sustained and then the protestants secured an appeal here.

The only evidence offered in support of the assessment was a stipulation by counsel to the effect that if the assessor were to testify he would say that he valued the lands of the Cochran Company upon the same basis and at the same rate as he did all other lands of like character within the several districts where the Cochran Company lands are located. Three witnesses testified on behalf of the company. The evidence of these witnesses is based largely upon a voluntary (but involved) arrangement made in 1929 (after canvassing the markets for coal properties) between (a) the stockholders of the Cochran Company and the Connellsville Corporation, and

(b) the Cochran Company and the Connellsville Corporation. This arrangement is as follows: By a contract in writing dated June 1, 1929, the Cochran stockholders sold all of their stock (in the Cochran Company) to the Connellsville Corporation for $5,000,000, to be paid in installments of $30,000 every three months, without interest, until May 31, 1953, when $2,150,000 (presumably the balance though not so designated) should be paid. The stock was then deposited with a trustee, as collateral security for the payment of the $5,000,000. Concurrent with and supplementary to the stock sale, the Cochran Company leased all of its lands for a term ending May 31, 1953, to the Connellsville Corporation for which the latter agreed to pay to the former as "minimum rentals" $30,000 a quarter until May 31, 1953, when it should pay $2,150,000. The stock sale contract, however, provided that the lease agreement to pay these rentals should not become effective unless the Connellsville Corporation defaulted in its payments for the stock. (Counsel term this covenant of the lease "simply a double barrelled method to secure the persons from whom the stock was purchased.") The lease further provided that the lessee should pay "such moneys as shall be necessary to enable the lessor to pay * * * any and all taxes * * * levied * * * against the lessor, its capitol stock, properties and assets." The witnesses, ignoring the lease, calculated the present value of the stock sale at six per cent to be $2,028,736.99 and were of opinion that this sum represented the actual value of the Cochran Company's physical properties. They refer to this sum as *the sale price of the land,* but that testimony is at variance with the written instruments, and must be disregarded. In order to justify ignoring the lease (and its covenant to pay taxes), counsel for protestants ingeniously contend that in effect this entire arrangement is an executory sale of all the Cochran Company's property; that a vendee in possession (such as the Connellsville Corporation) pays taxes on the purchased property as a matter of law (citing *Spies* v. *Butts,* 59 W. Va. 385); and hence the covenant in the lease to pay the taxes is of no value.

We cannot agree, however, to treat the arrangement as an executory sale of the Cochran Company's property when the

parties themselves have so studiously avoided treating it as such a sale. Even if we were to countenance measuring the present value of the physical properties by the present value of the transaction, the measure should be taken from the entire transaction, i. e., *the stock sale and the lease,* and not from the stock sale alone. Under the general law, as well as under Code 1923, chapter 30, section 18, no duty is imposed on a lessee to pay the taxes on leased property except by special contract. Consequently, the covenant in the lease that the lessee shall pay the taxes is a voluntary assumption, of such payment by the Connellsville Corporation. That covenant is a component part of the transaction, and of equal dignity with the covenant to make the quarterly payments. The circuit court estimated the annual taxes of the Cochran Company at $40,000. If the estimate is at all accurate then in concrete terms the yearly payments by the Connellsville Corporation, under the entire arrangement, will approximate $160,000, instead of $120,000 under the stock sale alone, as considered by the witnesses. Consequently, their opinions as to the value of the property based only on the stock sale fail in persuasive quality. Besides, it is common knowledge that money by the millions, secured as well as the payments here involved are secured, does not usually command six per cent. The present value of this stock sale would, of course, be materially greater than $2,028,736.99, if calculated at even five per cent.

The order of the circuit court is supported by substantial evidence (the stipulation as to the testimony of the assessor) and the evidence for protestants does not demonstrate that the order is plainly wrong. *Liberty Coal Company* v. *Bassett, etc.,* 108 W. Va. 293. It is accordingly affirmed.

*Affirmed.*