*In Re:* TAX ASSESSMENTS Against THE SOUTHERN LAND COMPANY, CHARLES C. DICKINSON, *et al.*

(No. 10861)

Submitted September 11, 1957. Decided November 26, 1957.

*Payne, Minor, Ray, Price & Loeb,* for plaintiffs in error.

*W. W. Barron,* Attorney General, *Henry C. Bias, Jr.,* Assistant Attorney General, *Earl M. Hall,* Prosecuting Attorney, for defendant in error.

RILEY, PRESIDENT:

This is a statutory "appeal", instituted under Code, 11-3-25, as amended, by The Southern Land Company, Charles C. Dickinson, John Q. Dickinson, Charles C. Dickinson, Jr., and Mary Price Ratrie, the owners of certain fee and mineral properties located in Boone County, to reduce the assessed valuations of the taxpayers' properties. From an adverse decision of the County Court of Boone County, acting as a board of equalization and review, the taxpayers appealed to the Circuit Court of Boone County, and the proceeding is before this Court "on appeal" (writ of error) to the order of the Circuit Court of Boone County affirming the order of the county court.

Succinctly stated, the two issues before this Court are: (1) Whether the properties of the taxpayers have been assessed at more than their true and actual values; and

(2) whether the taxpayers have been discriminated against in the assessment of their properties.

In an order entered by the Circuit Court of Boone County on February 9, 1957, the circuit court found that the lands of the taxpayers had not been assessed for the year 1955 at more than their true and actual values, and that there had been no unlawful discrimination against the taxpayers.

The following errors are assigned: (1) Valuations on taxpayers' properties are in excess of their true and actual values; (2) taxpayers are discriminated against by lower valuations of like adjacent property; (3) taxpayers are discriminated against by assessment of Class III property in Boone County at 61.75% of its value and Class II property and Class IV property at 28.45% and 25.85%, respectively; (4) taxpayers are discriminated against because Class III property in Boone County is assessed at a greater percentage of its true and actual value than Class III property in other counties; and (5) taxpayers are discriminated against because their property in Boone County is taxed higher than other species of property in West Virginia of equal value.

Taxpayers' properties consist of land owned in fee, mineral interests and coal interests, situated in Sherman, Crook and Washington Districts of Boone County.

Prior to May 1, 1955, the taxpayers filed with the Assessor of Boone County a return showing *inter alia* what they deemed to be the true and actual value of the properties, whose valuations for taxation purposes are in question here, as of January 1, 1955. The Assessor of Boone County, evidently believing this return to be erroneous, with the aid of H. R. Ball, Deputy Assessor of Boone County, and Fred Ramsey, a mining engineer familiar with mineral properties in Boone County, assessed the taxpayers' properties at what he considered to be their true and actual valuations. Being dissatisfied with the assessed valuations placed on their properties by the assessor, the taxpayers appeared, pursuant

to Code, 11-3-24, before the County Court of Boone County, sitting as a board of equalization and review, on June 20 and 21, 1955. After hearing the evidence presented at this hearing, the county court reduced four of the total of sixteen valuations in question here, and affirmed the assessor's valuations on all the others.

Thereupon the taxpayers, pursuant to the provisions of Code, 11-3-25, as amended, appealed to the Circuit Court of Boone County from the order of the county court of that county; and the circuit court entered the order of June 9, 1957, unequivocally affirming the valuations placed on the taxpayers' properties by the County Court of Boone County, as follows:

## "SHERMAN DISTRICT

| Description | Landowners Returns | Assessor | Valuation County Court | Circuit Court |
|---|---|---|---|---|
| 69.28A, Fee, Joes Creek | $ 1,800.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 |
| 22.03A, Fee, Toneys Br. | 575.00 | 650.00 | 650.00 | 650.00 |
| 879.8A, Fee, Big Coal and Horse Creek | 22,875.00 | 35,200.00 | 35,200.00 | 35,200.00 |
| 3741.33A, Fee, Big Coal River | 92,275.00 | 224,400.00 | 187,050.00 | 187,050.00 |
| 44.07A, Fee, Seng Creek | 450.00 | 1,400.00 | 1,400.00 | 1,400.00 |
| 2927.1A, Fee, Laurel Creek | 70,250.00 | 102,450.00 | 102,450.00 | 102,450.00 |

## "CROOK DISTRICT

| Description | Landowners Returns | Assessor | Valuation County Court | Circuit Court |
|---|---|---|---|---|
| 2149.26A, Fee, Less Timber, Matts Creek & West Fork | $ 63,155.00 | $128,900.00 | $107,400.00 | $107,400.00 |
| 310.38A, Fee, West Fork | 10,865.00 | 17,000.00 | 15,500.00 | 15,550.00 |
| 3017.38A, Fee, Pond Fork | 75,000.00 | 136,000.00 | 136,000.00 | 136,000.00 |
| 1005A, Fee, Pond Fork | 36,175.00 | 45,200.00 | 45,200.00 | 42,500.00 |
| 149.3A, Fee, Pond Fork | 5,375.00 | 6,700.00 | 6,700.00 | 6,700.00 |
| 361.2A, Fee, Pond Fork | 13,000.00 | 16,200.00 | 16,200.00 | 16,200.00 |

**"WASHINGTON DISTRICT**

| | | | | |
|---|---|---|---|---|
| 3983.29A, Fee, Spruce Laurel | $137,650.00 | $179,000.00 | $159,100.00 | $159,100.00 |
| 129.25A, Fee, Spruce Laurel | | 3,200.00 | 3,200.00 | 3,200.00 |
| 327.72A, Fee, Spruce Laurel | | 8,200.00 | 8,200.00 | 8,200.00 |
| 262.5A, Min. Turtle Creek | 1,825.00 | 3,900.00 | 3,900.00 | 3,900.00" |

As indicated in the brief of the Attorney General of West Virginia, there are two discrepancies in the figures just quoted as follows: (1) With regard to the 310.35 acres, fee on West Fork in Crook District, Boone County, the county court arrived at an assessed valuation of $15,500.00, whereas the circuit court placed the valuation on this land at $15,550.00, or $50.00 higher than the valuation placed thereon by the County Court of Boone County; and (2) the county court assessed the 1,005-acre tract of land, held in fee on Pond Fork in Crook District, at $45,200.00, whereas the circuit court fixed a valuation of $42,500.00 thereon, or $2,700.00 less than the valuation placed on the tract by the county court. Inasmuch as the order of the Circuit Court of Boone County, to which this writ of error is prosecuted, purports to and does affirm the valuations fixed by the County Court of Boone County, the specific valuations contained in the order as to these two tracts will be disregarded on this writ of error.

From the oral arguments before this Court, the Attorney General of West Virginia, through the Honorable Henry C. Bias., Jr., an Assistant Attorney General, raised the question whether this Court has jurisdiction to review the order of the Circuit Court of Boone County. Inasmuch as the questions presented on this writ of error pertain solely to the valuations of taxpayers' properties, and because this phase had not been considered in the briefs of either of the parties, the Court suggested that counsel submit briefs on this question so that it may properly and specifically be disposed of by the Court.

The sole constitutional basis for the inquiry concerning the jurisdiction of this Court is Article V of the West Virginia Constitution, which reads as follows: "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature."

This Court is well aware that through the course of many years this jurisdictional question, though it has been dealt with or ignored on many occasions, has not been consistent in its decisions.

In two of the early cases which were presented to this Court, it was held that the Supreme Court of Appeals had no jurisdiction to fix the valuation of land for assessment purposes. *Pittsburgh, Cincinnati, & St. Louis Ry.* v. *The Board of Public Works,* 28 W. Va. 264; and *Mackin* v. *County Court of Taylor County,* 38 W. Va. 338, 18 S. E. 632, which cases were decided, respectively, in the years 1886 and 1893. Notwithstanding the rather categorical statements contained in the syllabuses and opinions in the *Pittsburgh, Cincinnati, & St. Louis Railway* and *Mackin* cases, supra, the Court in the case of *Wheeling Bridge & Terminal Railway* v. *Paull, Judge,* 39 W. Va. 142, 146, 19 S. E. 551, in granting a writ of mandamus, required the Circuit Court of Ohio County to determine the question of valuation and declared that: "The ascertainment of the values of property is strictly judicial." However, in this latter case no mention was made of the earlier *Pittsburgh, Cincinnati, and St. Louis Railway* and *Mackin* cases, supra. In the case of *Charleston & Southside Bridge Co.* v. *Kanawha County Court,* 41 W. Va. 658, 665, 24 S. E. 1002, decided in 1896, only three years after the *Mackin* case was decided, this Court accepted jurisdiction of the valuation question in the following language: "* * * We must then regard this judgment of the court in fixing the valuation of this

bridge property upon the testimony introduced in the cause as a judicial act."

In *Pittsburgh, Cincinnati, & St. Louis Railway* v. *The Board of Public Works of West Virginia, supra*, this Court held:

"1. The action of the circuit court in supervising the decision of the board of public works as to the assessment and valuation of railroad property for taxation under the provisions of chap. 52, Acts 1883, is merely administrative and not judicial—the court acting in such case as an appellate assessment or tax tribunal and exercising powers distinct from those belonging to it as a court or judicial tribunal in the legal sense of that term.

"2. Under our Constitution the Supreme Court of Appeals of the State has no power to review by writ of error or appeal the decisions or orders of inferior tribunals, officers or boards as to matters which are simply administrative, executive or legislative and not strictly judicial in their nature, except where such power may be expressly conferred by the Constitution.

"3. This Court has no jurisdiction to review by writ of error a decision of the circuit court correcting an order of the board of public works assessing and fixing the value of railroad-property for taxation."

The decision of this Court in this case was affirmed by the Supreme Court of the United States in 172 U. S. 32, 19 S. Ct. 90, 43 L. ed. 354.

In 1896 in the case of *State* v. *South Penn Oil Co.*, 42 W. Va. 80, 24 S. E. 688, in point 2 of the syllabus, this Court held: "When the question of legality or illegality of the listing of property on the land books for taxation comes before the county court for *corection*, on the application of the party assessed, who feels himself aggrieved, the county courts acts, in review of the action of the commissioner of reassessment as an administrative board; and such action of the county court is not 'judicial', within the meaning of section 24 of article VIII

of the Constitution." In point 3 of the syllabus of the above-cited case, the Court held: "When the issue on such controversy is made up between the applicant and the state for the purpose of appeal to, and decision between such parties by, the circuit court, as to the right and legality of such assessment litigated between them, in the mode and according to the proceeding prescribed by law in such case for contesting the right claimed, and deciding the controversy, the orders and judgment of the circuit court are made and rendered in the exercise of its judicial power, in the proper and ordinary sense." However, Judge Dent in a concurring opinion to this case stated that: "In accordance with my opinion in the case of *State* v. *Charleston & S. S. Bridge Co.*, 41 W. Va. 658 (24 S. E. 1002) decided at this term of court, and for reasons therein stated, I have reached the conclusion that the circuit court, in hearing appeals in tax assessment cases, necessarily acts in a dual capacity, to wit: (1) As a mere assessor representative of the legislative branch of the state government, in the ascertainment of assessable valuations for the purposes of taxation; (2) as a court representative of the judicial branch of the state government in the determination of the constitutional and statutory right of taxation. In cases coming under the first division solely, this Court is without jurisdiction; but, as to cases coming under the second division, this Court has appellate jurisdiction, by means of writ of error."

While this distinction apparently guided the Court for a number of years, in the case of *Liberty Coal Co., et als., State, etc.* v. *C. E. Bassett, Chairman, etc., et als.*, 108 W. Va. 293, 151 S. E. 745, a case in which the Court, in considering the question of the valuation of property for taxation purposes, did not discuss the jurisdictional question involved, but assumed jurisdiction of the case and decided the issues presented by the record; and then for the next six years similar decisions were made by this Court in the following four cases: *Central Realty Company* v. *Board of Review*, 110 W. Va. 437, 158 S. E. 537

(1931); *Cochran Coal & Coke Company, et al. v. Board of Equalization and Review of Monongalia County,* 110 W. Va. 556, 158 S. E. 906 (1934); *West Penn Power Company, et al. v. Board of Review and Equalization of Brooke County,* 112 W. Va. 442, 164 S. E. 862 (1932); *E. H. Crouch v. County Court of Wyoming County,* 116 W. Va. 476, 181 S. E. 819 (1935).

In the *West Penn* case, *supra,* the Court, while admitting that the problems are "primarily administrative", stated that: "* * * Though doubting the right of the Legislature thus to clothe this Court with authority and duty of reviewing assessments we have submitted to it because of long practice." However, such "long practice" only dated back two and a half years to the decision of this Court in the case of *Liberty Coal Co., et al. v. Bassett, supra.*

The inconsistencies, which have prevailed in the decisions of this Court as to the judicial review of administrative action, have been fully discussed by Professor Kenneth C. Davis, of the College of Law of West Virginia University, in an article entitled "Judicial Review of Administrative Action in West Virginia—A Study in Separation of Powers", 44 W. Va. L. Q. 270, at page 277. Another able discussion concerning the extent of judicial review of administrative questions in West Virginia was written in 1946 by David Dale Johnson, now a member of the Bar of this Court, then a student in the College of Law of West Virginia University, in a student note entitled "Extent of Judicial Review of Tax Determinations in West Virginia", 50 W. Va. L. R. 75. More recently, in 1942, in the case of *Norfolk and Western Railway Co. v. Board of Public Works,* 124 W. Va. 562, 21 S. E. 2d 143, the Court said: "We wish to note and correct in passing a statement made in the opinion in the case of *Wheeling Bridge & Terminal Railway Co. v. Paull, Judge,* 39 W. Va. 142, 147, 19 S. E. 551, to the effect that the ascertainment of the value of property is strictly a judicial function. For the purpose of taxation, it is primarily an executive or administrative function with which the courts will not

interfere unless shown plainly to have been abused. *Great Northern Ry. Co.* v. *Weeks,* 297 U. S. 135, 151, 56 S. Ct. 426, 80 L. Ed. 532. This Court has neither inherently nor under any statute of which we are aware, administrative jurisdiction nor authority and hence can only view the matter of valuation for the purposes of taxation to the extent that that may be done in the exercise of its judicial power. See *State* v. *McDowell Lodge,* 96 W. Va. 611, 612, 123 S. E. 561, 38 A. L. R. 31."

In the case of *Backus* v. *Abbot, Assessor, etc.,* 136 W. Va. 891, 898, 69 S. E. 2d 48, it is stated that the assessor in determining the taxability and valuation of property and in assessing it for taxation "* * * though exercising judgment as to matters of fact and law, performs a ministerial duty as distinguished from a judicial function * * *."

Then again in the case of *In Re: Tax Assessments Against the National Bank of W. Va. at Wheeling,* 137 W. Va. 673, 681, 73 S. E. 2d 655, decided in 1953, this Court stated: "* * * The assessor's duties, however, are ministerial, not judicial * * *."

Notwithstanding the foregoing statements, this Court took jurisdiction of cases involving the valuations of taxpayers' properties, and declared such valuations erroneous in the following cases: *Norfolk and Western Railway Co.* v. *Board of Public Works,* 124 W. Va. 562, 21 S. E. 2d 143 (1942); *In re: Tax Assessments Against Hancock County Savings and Loan Association,* 125 W. Va. 426, 25 S. E. 2d 543 (1943); and *Bankers Pocahontas Coal Co.* v. *County Court,* 135 W. Va. 174, 62 S. E. 2d 801 (1950).

In the *Bankers Pocahontas Coal Company* case, *supra,* the Court, in discussing Article V of the West Virginia Constitution, said: "* * * if strictly applied would require that the statute, authorizing consideration of the question here presented, be held unconstitutional. But under the theory of contemporaneous construction, this Court has assumed jurisdiction of proceedings involving the valuation of property for taxation purposes * * *."

Evidently the current rule governing the separation of powers in cases involving the assessed valuation of a taxpayer's property, a rule to which this Court as presently constituted now adheres, is stated in *Western Maryland Railroad Co. v. Board of Public Works of West Virginia*, 124 W. Va. 539, 21 S. E. 2d 683, as follows: "Our judgment, therefore, is that the corrected assessment made by the Circuit Court of Randolph County is sufficiently supported by the evidence and involves no error of law, and that, therefore, it is beyond the jurisdiction of this Court to interfere therewith."

Thus it appears that in the consideration of the question of the classification of issues as being judicial or nonjudicial, though concurrently not relied upon in determining whether the circuit courts' decisions should be reviewed, bears effectively upon the extent of the Court's review of the question of valuation and assessment of property.

We are, therefore, of opinion that this Court has jurisdiction to review and determine questions involving the valuation of property for taxation purposes, but such jurisdiction is limited to those cases in which the administrative finding is either not supported by substantial evidence, or is so palpably wrong as to amount to a *mala fides* purpose to disregard the constitutional principles of uniformity of taxation set forth in the West Virginia Constitution, or where the constitutionality of a statute is involved.

In the latter regard West Virginia Constitution, Article VIII, Section 3, provides, *inter alia*, that the Supreme Court of Appeals shall have jurisdiction "* * * in controversies concerning * * * the right of a corporation or county to levy tolls or taxes; * * * and in cases involving freedom or the constitutionality of a law * * *."

Subject to the limitations governing the jurisdiction of this Court, the question before us is raised by Article X, Section 1, of the West Virginia Constitution, which reads: "Subject to the exceptions in this section contained, tax-

ation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value * * *." This requirement of equality and uniformity of taxation, as set forth in Article X, Section 1 of the West Virginia Constitution, means that as to all classes of property, business or incomes there shall be uniformity of taxation. *West Penn Power Co.* v. *Board of Review and Equalization of Brooke County*, 112 W. Va. 442, 164 S. E. 862; *Christopher* v. *James, Tax Commissioner*, 122 W. Va. 665, 12 S. E. 2d 813; *Charleston & Southside Bridge Co.* v. *Kanawha County Court, supra.*

In so determining, we are governed by the norm that there is a presumption in favor of the validity of tax assessments regularly made, and that the burden is upon those who seek to show that the valuation upon which a tax liability is asserted is excessive. *Bankers Pocahontas Coal Co.* v. *County Court, supra; Norfolk and Western Railway Co.* v. *Board of Public Works, supra.* The ascertainment of the value of property for purposes of taxation is primarily an executive or administrative function, with which the courts will not and cannot interfere, unless the assessment upon which the proposed taxation is based is without substantial evidence to support it, or is in violation of the due process clause of the West Virginia Constitution, Article III, Section 10, or in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. In all other cases where taxation is not unlawfully made in contravention of a statute or provision of the United States or West Virginia Constitutions, this Court is without jurisdiction.

This record, however, discloses that the assessment of the taxpayers' properties for taxation purposes was not made in violation of a statute providing for such assessment, nor was it in contravention of any constitutional provision.

So the only question before this Court on the instant record is whether the assessment made by the assessor, as well as the action of the county court, in determining the valuations of the properties in question, and the order of the circuit court in affirming the order of the county court, is without substantial evidence to support it.

In this regard it is to be noted that the assessor, evidently with diligence and with the aid of his deputy assessor, and in particular with the aid of the only mining engineer who, this record discloses, was familiar with the seams of coal in Boone County, fixed the valuations complained of here. Without question the assessor, accompanied by his deputy and mining engineer Fred Ramsey, a resident of Boone County, viewed all the properties which they were able "to get to" in Boone County before making the valuations complained of.

The only two witnesses for the taxpayers who testified before the County Court of Boone County were Arthur Osborne and Garland Wilkinson, both of whom were non-residents of Boone County, and one of whom was an employee of The Southern Land Company on a permanent basis, and the other on a temporary basis. It is important to note that Mr. Osborne's familiarity with tax values in Boone County was based to a large extent on the sale in 1948 of thirteen acres of land in that county belonging to The Southern Land Company, the sale price of which he was unable to recall; and that Wilkinson, in answer to the question: "You don't know the prices of real estate here in Boone County or in any of the districts yourself, or have any lots that have been sold during the past year, do you", replied, "No, sir, I don't." Wilkinson also testified in answer to the question: "You know don't you, Mr. Wilkinson, that conditions here in Boone County during the past year, that the coal mining industry is much better, much improved, in our entire county than it was before June of last year do you not", that "I wouldn't know. I was basing my opinion entirely on Kanawha County and those communities immediately adjacent to Kanawha County."

The testimony of these two witnesses at most would create a mere conflict in the evidence, and especially in view of the testimony of Assessor Dewey Williams to the effect that he used the "same rule" to assess the taxpayers' properties that he used in assessing other properties; and that in making the assessment he had not discriminated against The Southern Land Company or assessed The Southern Land Company by using a different formula that he used for other taxpayers on like classes of property. In view of this testimony, coupled with the testimony of Fred Ramsey, an experienced mining engineer, who testified *in extenso* concerning the assistance which he gave the assessor, this Court cannot hold that the valuations placed on taxpayers' properties by the assessor or the county court, which last valuations were affirmed by the order of the circuit court, were without substantial evidence to support them. There being in this case no question concerning the legality of the assessments, no question involving the constitutionality of a statute, or the violation of any constitutional mandate, this Court cannot and will not under its more recent holdings hold that the order of the Circuit Court of Boone County, affirming the order of the county court, may be disturbed.

For the foregoing reasons the order of the Circuit Court of Boone County, affirming the order of the County Court of Boone County, is affirmed.

*Affirmed.*