CAMPBELL SOUP COMPANY, APPELLANT AND CROSS-APPELLEE,
v. TRACY, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as *Campbell Soup Co. v. Tracy* (2000), 88 Ohio St.3d 473.]

(No. 99–120—Submitted March 8, 2000—Decided May 24, 2000.)

*Jones, Day, Reavis & Pogue, Todd S. Swatzler* and *John C. Duffy, Jr.,* for appellant and cross-appellee.

*Betty D. Montgomery,* Attorney General, *James C. Sauer* and *Richard C. Farrin,* Assistant Attorneys General, for appellee and cross-appellant.

***Per Curiam.*** We affirm the BTA's decision as to the appeal; we reverse the BTA's decision as to the cross-appeal.

As to the appeal, Campbell maintains that the BTA misunderstood and misapplied its evidence. Consequently, so it argues, the evidence does not support the BTA's decision, rendering the decision unreasonable and unlawful. The commissioner, in answer, argues that Campbell did not present competent and probative evidence to rebut the presumption of validity that his determination of value possesses.

Under R.C. 5711.09, the commissioner is to administer the personal property tax laws, adopting and promulgating necessary rules "so that all taxable property shall be listed and assessed for taxation." Under R.C. 5711.21(A), the commissioner is to follow rules and evidence "as will enable the [commissioner] to arrive at such true value."

Nearly sixty years ago, we approved of the commissioner's method to determine the true value of personal property, the 302 Computation. In *Wheeling Steel Corp. v. Evatt* (1944), 143 Ohio St. 71, 81, 83, 28 O.O. 21, 25, 26, 54 N.E.2d 132, 137, 138, we stated:

"So far as the record in this case discloses, we see no reason for criticism of the application of the so-called '302 Computation' especially as the evidence shows and as appellant admits, it is applied generally to all taxpayers in similar situations.  Of course, situations may arise where such computation would not be proper.  * * * Percentage depreciation is used almost universally in industry and in accounting.

" * * *

"The '302 Computation' as we understand the record and argument in this case is a rule adopted by [the] former Tax Commission and carried over under the provisions of Section 1464–4, General Code.  While it has not been duly promulgated and filed, we are of the opinion that the use of such rule in the instant cases is within the powers delegated to the Department of Taxation."

We summarized the reasoning and evidentiary process for valuing personal property under the 302 Computation in *Snider v. Limbach* (1989), 44 Ohio St.3d 200, 201–202, 542 N.E.2d 647, 649:

"Moreover, it is impractical for the commissioner to personally value all personal property in Ohio; thus, she may resort to a predetermined formula to ascertain value.  *W.L. Harper Co. v. Peck* (1954), 161 Ohio St. 300, 53 O.O. 178, 118 N.E.2d 643.  However, the formula must be adjusted when special or unusual circumstances or conditions of use exist or when evidence shows that rigid application would be inappropriate.  *Monsanto Co. v. Lindley* (1978), 56 Ohio St.2d 59, 62, 10 O.O.3d 113, 114, 381 N.E.2d 939, 941.  The burden to show that the commissioner's formula does not ascertain true value is met only if the appellant ' * * * introduces competent evidence of probative value of the personal property's true value in money.'  *Alcoa v. Kosydar* (1978), 54 Ohio St.2d 477, 481, 8 O.O.3d 459, 462, 377 N.E.2d 785, 788."

Thus, the commissioner may apply the 302 Computation to value personal property in Ohio. The burden is on taxpayers to show that they may deviate from the computation because special or unusual circumstances or conditions of use exist or because evidence shows that its rigid application would be inappropriate. The BTA errs if it reverses the commissioner's determination without receiving competent and probative evidence that the commissioner's determination of the property's true value is factually incorrect. *Hatchadorian v. Lindley* (1986), 21 Ohio St.3d 66, 21 OBR 365, 488 N.E.2d 145, paragraph two of the syllabus.

In *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1997), 77 Ohio St.3d 402, 405, 674 N.E.2d 696, 699, we clarified our role in appeals from the BTA.  We set forth when we affirm appeals from the BTA:

"Consequently, we affirm the BTA's basic factual findings if sufficient, probative evidence of record supports these findings.  We also affirm the BTA's rulings

on credibility of witnesses and weight attributed to evidence if the BTA has exercised sound discretion in rendering these rulings. Finally, we affirm the BTA's findings on ultimate facts, *i.e.*, factual conclusions derived from given basic facts, *Ace Steel Baling, Inc. v. Porterfield* (1969), 19 Ohio St.2d 137, 142, 48 O.O.2d 169, 171–172, 249 N.E.2d 892, 895–896, if the evidence the BTA relies on meets these above conditions, and our analysis of the evidence and reading of the statutes and case law confirm its conclusion. After meeting all these prerequisites, the BTA's decision would, thus, be reasonable and lawful, pursuant to R.C. 5717.04."

In this case, Campbell asserts that the BTA misunderstood and misapplied its evidence. We disagree. The BTA pointed out in clear terms the problems it had with Campbell's evidence. As for the obsolescence study, the BTA observed that the 302 Computation considers obsolescence but that Connolly's report did not establish special or unusual circumstances to alter the commissioner's application of the 302 Computation. The BTA declined to give Connolly's report any weight or Connolly any credibility. The BTA pointed out faults in his report and questioned Connolly's judgment in ignoring these faults and in stating they had a minimal impact on his calculations.

As to the lifing study, the BTA found that the study failed to establish the accurate useful lives of the equipment. The BTA did not accept the Iowa curves. We read the record and found no description of how the curves were developed or why Connolly used the curves he did. Connolly could not explain the formula or the nature of its calculation. "That's up to my computer programmer. We gave him the information, he developed it." The BTA also found the disposal study to be too narrow in the data it studied. The BTA did not abuse its discretion in failing to grant Connolly's testimony credibility or his reports any weight. Moreover, Campbell did not present sufficient, competent, and probative evidence to overcome the presumption of correctness that the commissioner's determination of value possesses.

As to the cross-appeal, the commissioner argues that the BTA selected the average salvage value as the floor value of the equipment, thus undervaluing the property. Campbell replies that Connolly's study showed that "5.31% of the original cost of the property could be recovered on disposition." We agree with the commissioner.

The 302 Computation describes the floor value as the minimum acceptable value. Beneath the "Tables for Determining True Value," which sets forth the depreciation allowances, the commissioner has written:

"The lowest percentage in each class determines the minimum acceptable value so long as property is held for use in business."

This language compares with the definition of "residual value" found in Siegel & Shim, Dictionary of Accounting Terms (1987) 362:

"3. Value of a depreciable asset after all allowable depreciation has been taken."

The same dictionary, at 375, defines "salvage value" as:

"[E]xpected price for a fixed asset no longer needed in business operations; also called SCRAP VALUE."

The floor value, "the minimum acceptable value so long as property is held for use in business," equals the residual value of the assets, not their salvage value. Connolly, to determine his proposed floor value of 5.31 percent, divided the proceeds from sales of assets disposed of in 1992 by a "current cost new" amount for these assets. He derived this current cost new by applying an "index factor" to the amount capitalized for these sold assets. Connolly called the proceeds from sales of disposed assets their "recovery amount." The BTA, after reviewing this study, concluded that, "Mr. Connolly's studies support that the personal property has little salvage value."

This recovery amount sounds very much like the salvage value, the "expected price for a fixed asset no longer needed in business operations," not the residual value described by the commissioner in the 302 Computation. Consequently, Connolly determined the salvage value of Campbell's equipment; he did not determine its floor value. Thus, the evidence the BTA relied on was not probative of the finding it was to make. The BTA erred in this reliance.

Accordingly, as to the appeal, we hold that the BTA's decision is reasonable and lawful and affirm it. As to the cross-appeal, we hold that the BTA's decision is unreasonable and reverse it.

*Decision affirmed in part*
*and reversed in part.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents and would affirm the Board of Tax Appeals in toto.