**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 5, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ALCAN ROLLED PRODUCTS – RAVENSWOOD, LLC,**
**Petitioner Below, Petitioner**

**vs.) No. 11-1752 (Jackson County No. 10-AA-3)**

**THE HONORABLE CRAIG A. GRIFFITH,**
**WEST VIRGINIA STATE TAX COMMISSIONER,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

The petitioner herein, Alcan Rolled Products – Ravenswood, LLC [1] ("Alcan"), appeals from an order entered November 23, 2011,[2] by the Circuit Court of Jackson County. By that order, the circuit court affirmed the February 25, 2010, ruling of the Jackson County Commission, sitting as a Board of Equalization and Review ("the Board"). In its decision, the Board had upheld the Tax Commissioner's valuation of Alcan's industrial personal property for tax year 2010 in the amount of $92,960,786. Before this Court, Alcan challenges that valuation.

---

[1] On August 1, 2011, the taxpayer herein, Alcan Rolled Products – Ravenswood, LLC, changed its name to Constellium Rolled Products Ravenswood, LLC. However, for purposes of the instant appeal, we will refer to the taxpayer by its former name, Alcan, to maintain consistency with the record of the underlying proceedings.

[2] The circuit court entered its initial order in this case on November 23, 2010. However, because the taxpayer did not receive a copy of the court's final order, the circuit court vacated its initial order and re-entered it on November 23, 2011, to permit Alcan to appeal to this Court. In granting Alcan relief, the circuit court found its Rule 60(b) motion to be timely and concluded that the Tax Commissioner would not be prejudiced by the re-entry of the order insofar as Alcan already had paid its 2010 taxes based upon the Tax Commissioner's valuation that Alcan challenges herein and appellate review would be based upon the record developed before the Board. *See generally* W. Va. R. Civ. P. 60(b) (permitting party to seek relief from court's final order based upon mistake and excusable neglect, among other factors).

1

Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we affirm the circuit court's decision upholding the valuation of Alcan's industrial personal property for tax year 2010. Moreover, because this case does not present a new or significant issue of law, we find this matter to be proper for disposition pursuant to Rule 21 of the West Virginia Revised Rules of Appellate Procedure.

The facts giving rise to the instant proceeding are as follows. Alcan owns an aluminum manufacturing plant; at its plant, Alcan melts aluminum ingots and produces aluminum plates and other products. For tax year 2010, the Tax Commissioner valued Alcan's industrial personal property at $92,960,786. This calculation included all of Alcan's equipment and machinery: both (1) Alcan's older- acquired industrial personal property that it acquired before 1990 and (2) Alcan's newer-acquired industrial personal property. With regard to Alcan's pre-1990 equipment and machinery, the Tax Commissioner determined that all of these items together had a combined value of $8,696,762, to reflect this property's depreciation to a floor limit of 80% depreciated and 20% good.[3] Included within this grouping of depreciated property is Alcan's primary piece of manufacturing equipment: a thirty million pound stretcher ("the stretcher"). The stretcher has been in service for at least forty years, and produces approximately 85% of the products it produced when new. Alcan represents that this reduction in production using the stretcher is due to cracks in the equipment that Alcan plans to repair.[4] Commensurate with this diminished production, the Tax Commissioner allowed Alcan an additional deduction of $10,328,976 for functional obsolescence, or roughly 10% of the $92,960,786 valuation of all of Alcan's industrial personal property, to coincide with the percentage of lost production that is attributable to the stretcher's deteriorated condition.

Alcan disagreed with the Tax Commissioner's valuation of its industrial personal property and requested review thereof before the Jackson County Commission, sitting as a Board of Equalization and Review. In support of its argument for a lower valuation of its

---

[3]The Tax Commissioner explained that this floor depreciation limit is the highest level of depreciation that can be attributed to property that is still being utilized.

[4]Alcan represents that it plans to spend approximately $40,300,000 to repair the stretcher and additional sums to repair other equipment and machinery. These expenditures may qualify the affected property as "certified capital addition property" for valuation purposes in the tax year in which these expenses are incurred to make the referenced repairs. *See* W. Va. Code § 11-6F-3 (2011) (Supp. 2012) (explaining tax implications for "certified capital addition property"). However, because Alcan did not make these capital expenditures in tax year 2010, which is the tax year at issue in the case *sub judice*, we need not further consider this matter.

industrial personal property, Alcan sought to deduct an additional $35,357,721 in functional obsolescence to reflect the capital investment it intends to spend to repair the stretcher.[5] Incorporating this deduction into the property's valuation, Alcan requested a re-valuation of its industrial personal property in the amount of $41,000,656 rather than the $92,960,786 valuation calculated by the Tax Commissioner for the 2010 tax year. By decision entered February 25, 2010, the Board upheld the Tax Commissioner's valuation. Alcan then appealed the Board's ruling to the Circuit Court of Jackson County. By order entered November 23, 2011,[6] the circuit court affirmed the Board's decision. From the circuit court's order, Alcan now appeals to this Court.

We previously have held that, "[a]s a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct." Syl. pt. 2, in part, *Western Pocahontas Props., Ltd. v. County Comm'n of Wetzel Cnty.*, 189 W. Va. 322, 431 S.E.2d 661 (1993). Thus,

> """"[a]n assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syl. pt. 1, *West Penn Power Co. v. Board of Review and Equalization*[ *of Brooke County*], 112 W. Va. 442, 164 S.E. 862 (1932)." Syl. pt. 3, *Western Pocahontas Properties, Ltd. v. County Comm'n of Wetzel County*, 189 W. Va. 322, 431 S.E.2d 661 (1993).' Syl. pt. 4, *In re Petition of Maple Meadow Mining Co. for Relief from Real Property Assessment For the Tax Year 1992*, 191 W. Va. 519, 446 S.E.2d 912 (1994)."

Syl. pt. 3, *In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W. Va. 14, 672 S.E.2d 150 (2008). *Accord* Syl. pt. 2, *In re Tax Assessments Against the S. Land Co.*, 143 W. Va. 152, 100 S.E.2d 555 (1957), *overruled on other grounds by In re the Assessment of Shares of Stock of the Kanawha Valley Bank*, 144 W. Va. 346, 109 S.E.2d 649 (1959) ("In a case involving the assessment of property for taxation purposes, which does not involve the violation of a statute governing the assessment of property, or a violation of a constitutional provision, or in which a question of the constitutionality of a statute is not involved, this Court will not set aside or disturb an assessment made by an assessor or the county court, acting as a board of equalization and review, where the assessment is supported by substantial evidence."). A taxpayer seeking to prove that an assessment is wrong must

---

[5]It is not apparent from the record why the figure that Alcan seeks to deduct in additional functional obsolescence, $35,357,721, is not the same as the amount it has indicated that it will spend to repair the stretcher, *i.e.*, $40,300,000. *See* note 4, *supra*.

[6]*See supra* note 2.

do so by clear and convincing evidence. "The burden is on the taxpayer challenging the assessment to demonstrate by clear and convincing evidence that the tax assessment is erroneous." Syl. pt. 2, in part, *Western Pocahontas Props.*, 189 W. Va. 322, 431 S.E.2d 661. *Accord* Syl. pt. 5, in part, *In re Foster Found.*, 223 W. Va. 14, 672 S.E.2d 150 ("A taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such tax assessment is erroneous."); Syl. pt. 3, *State ex rel. Prosecuting Attorney of Kanawha Cnty. v. Bayer Corp.*, 223 W. Va. 146, 672 S.E.2d 282 (2008) ("A taxpayer seeking relief from an erroneous tax assessment under W. Va. Code § 11-3-27 (2000) (Repl. Vol. 2008), must establish entitlement to relief by clear and convincing evidence."). Finally, "[i]n cases where a taxpayer challenges an *ad valorem* tax assessment, a circuit court's conclusions of law are reviewed by this Court *de novo*." Syl. pt. 3, *Pope Props./Charleston Ltd. Liab. Co. v. Robinson*, 230 W. Va. 382, 738 S.E.2d 546 (2013). Upon our review of the record before us, we conclude that the Tax Commissioner presented substantial evidence[7] to support his valuation of Alcan's industrial personal property and that Alcan failed to prove by clear and convincing evidence that such valuation was erroneous.

When assessing property for taxation purposes, the Tax Commissioner is required to "value all industrial property in the State at fair market value." W. Va. Code § 11-1C-10(c) (1994) (Repl. Vol. 2008).

> Title 110, Series 1P of the West Virginia Code of State Rules confers upon the State Tax Commissioner discretion in choosing and applying the most accurate method of appraising commercial and industrial properties. The exercise of such discretion will not be disturbed upon judicial review absent a showing of abuse of discretion.

Syl. pt. 5, *In re Tax Assessment Against Am. Bituminous Power Partners, L.P.*, 208 W. Va. 250, 539 S.E.2d 757 (2000). Pursuant to W. Va. C.S.R. § 110-1P-2.5.3.2 (1991), the cost approach is the method most favored for the valuation of industrial equipment and machinery. The "cost approach" is explained as follows:

> To determine fair market value under th[e cost] approach, replacement

---

[7]While we find that the Tax Commissioner presented substantial evidence of its valuation of Alcan's industrial personal property, the record before the Board did not include the appearance, or testimony, of the Tax Commissioner's employee who evaluated the property's functional obsolescence and allowed a further reduction for this depreciation. In future cases, the better approach would be to present the testimony of all appraisers participating in the valuation process so as to permit cross-examination regarding their methodology by the taxpayer challenging the correctness of such appraisal.

4

cost of the improvements is reduced by the amount of accrued depreciation and added to an estimated land value. In applying the cost approach, the Tax Commissioner will consider three (3) types of depreciation: physical deterioration, functional obsolescence, and economic obsolescence.

W. Va. C.S.R. § 110-1P-2.2.1.1 (1991). The parties do not dispute that the Tax Commissioner properly selected the cost approach in valuing Alcan's industrial personal property in the case *sub judice*.

Nevertheless, Alcan asserts that such valuation was wrong because, it claims, the Tax Commissioner did not apply the correct trend tables when it employed the cost approach. Alcan further argues that the Tax Commissioner also failed to make adjustments to its valuation for depreciation as required by the cost approach: "In applying the cost approach, the Tax Commissioner will consider three (3) types of depreciation: physical deterioration, functional obsolescence, and economic obsolescence." W. Va. C.S.R. § 110-1P-2.2.1.1. *See also* W. Va. C.S.R. § 110-1P-2.5.3.3 (1991) ("When physically inspecting commercial and industrial personal property for appraisal, three (3) types of depreciation should be considered[:] physical deterioration, economic obsolescence and functional obsolescence."). In its estimation, Alcan contends that the Tax Commissioner did not properly account for the physical deterioration or functional obsolescence of Alcan's property,[8] including its most significant item of industrial personal property: Alcan's thirty million pound stretcher. We disagree.

Alcan first argues that the Tax Commissioner used the wrong trend tables in valuing its industrial personal property under the cost approach. A valuation of property using the cost approach requires an initial determination of the replacement cost of the subject property. *See* W. Va. C.S.R. § 110-1P-2.2.1.1. This calculation is referred to as the "replacement cost new" ("RCN") and contemplates the cost to replace the taxpayer's existing property with comparable new property. In the case *sub judice*, the Tax Commissioner determined that the RCN for Alcan's industrial personal property, including its stretcher, would be $252,965,487. By contrast, Alcan proposed an RCN amount of $240,773,142. The main difference between these two figures seems to be the specific characterization of the nature of Alcan's operations and the application of trend tables that correspond to such characterization from which the RCN, and depreciation, are then calculated. In this regard, the Tax Commissioner classified Alcan as a metal manufacturing facility specializing in aluminum production and processing, whereas Alcan classified itself as a metalworking machinery manufacturing facility. Based upon the descriptions of the nature of Alcan's

---

[8]Alcan does not assert error regarding economic obsolescence. *See* W. Va. C.S.R. § 110-1P-2.2.1.1 (1991); W. Va. C.S.R. § 110-1P-2.5.3.3 (1991).

business set forth in the underlying proceeding, *i.e.*, melting aluminum ingots and producing aluminum plates and other products, we find that the Tax Commissioner accurately characterized the nature of Alcan's business operations and, accordingly, properly applied the corresponding trend tables to determine the RCN of Alcan's industrial personal property. Thus, we conclude that Alcan has not demonstrated, by clear and convincing evidence, that the Tax Commissioner's selection of trend tables to determine the RCN component of the cost approach analysis was erroneous.

Alcan next argues that the Tax Commissioner erred in his depreciation of Alcan's industrial personal property based upon physical deterioration. "Physical deterioration" is defined as "a loss in value due to natural wear and tear of property resulting from age, use, abuse, etc." W. Va. C.S.R. § 110-1P-2.3.20 (1991). In recognition of the advanced age and usage of much of Alcan's equipment and machinery, including its stretcher, the Tax Commissioner valued all of Alcan's industrial personal property that it had acquired before 1990 at a combined value of $8,696,762. The Tax Commissioner explained that this value was the lowest level of depreciation it could assign to property that is still being used, *i.e.*, 20% good and 80% depreciated. Alcan argued that its pre-1990 property should be depreciated further, at "salvage value." However, property classified as "salvage" typically signifies that the property is no longer operational and is useful to its owner only as scrap parts. *See, e.g., Campbell Soup Co. v. Tracy*, 88 Ohio St. 3d 473, 479, 727 N.E.2d 1259, 1264 (2000) (per curiam) (observing that "salvage value" is defined as "'expected price for a fixed asset no longer needed in business operations; also called SCRAP VALUE'" (quoting Siegel & Shim, *Dictionary of Accounting Terms* 375 (1987))). *See also* W. Va. Code § 11-6A-3 (1973) (Repl. Vol. 2008) (construing "salvage value" as "the price for which such [item] would sell . . . if voluntarily offered for sale by the owner thereof); W. Va. Code § 11-6E-2(b) (1996) (Repl. Vol. 2008) ("'Salvage value' means the lower of fair market salvage value or five percent of the original cost of the property."). By Alcan's own admission, though, "salvage" does not accurately describe the property at issue herein. Alcan's primary piece of pre-1990 equipment and machinery, its stretcher, produces the majority of Alcan's products. Furthermore, Alcan has stated that it intends to spend over $40 million to repair its stretcher. It goes without saying that a piece of equipment that is so vital to a company's manufacturing process can hardly be classified as "salvage" when it is still being used at 85% capacity and is slated to undergo major repairs to ensure its continued operation for the foreseeable future. Therefore, we find that Alcan has not proven, by clear and convincing evidence, that the Tax Commissioner's physical deterioration depreciation of Alcan's industrial personal property was erroneous.

Finally, Alcan argues that the Tax Commissioner improperly depreciated Alcan's industrial personal property based upon functional obsolescence. "Functional obsolescence" contemplates "[t]he loss of value due to factors such as excess capacity, changes in technology, flow of material, seasonal use, part-time use or other like factors. The inability

to perform adequately the function for which an item was designed." W. Va. C.S.R. § 110-1P-2.3.8 (1991). After meeting with Alcan executives, the Tax Commissioner allowed an additional 10% reduction in the value of Alcan's industrial personal property in recognition of the true condition of Alcan's equipment and machinery. This reduction appears to correlate with the stretcher's diminished production capacity that is attributable to its deteriorated condition. Nevertheless, Alcan contends that it should have been granted an additional reduction for functional obsolescence of $35,357,721 to correspond with the capital expenditure it plans to make to repair the stretcher.[9] We find this argument to be flawed for two reasons. First, and foremost, although Alcan has approved its intended capital expenditure, it did not actually incur these expenses during the 2010 tax year. Accordingly, until Alcan actually expends such funds, we find that it would be premature to reduce the value of Alcan's industrial personal property to reflect an *intended*, rather than an *actual*, expense because it has not yet been invested in the subject property. *See generally* W. Va. Code § 11-6F-2(a) (2012) (Supp. 2012) (defining "certified capital addition property"). Moreover, as noted above, "functional obsolescence" allows a reduction in value to account for, among other things, "the inability to perform adequately the function for which an item was designed." W. Va. C.S.R. § 110-1P-2.3.8. In this regard, we find that the Tax Commissioner correctly allowed an additional reduction in value of $10,328,976 for functional obsolescence. This allowance accurately not only recognized Alcan's continued usage of its equipment and machinery at 85% its original capacity but also considered that the production capacity of these machines has been diminished below the level at which they previously functioned. Therefore, we conclude that Alcan has not proven, by clear and convincing evidence, that the Tax Commissioner's functional obsolescence depreciation of Alcan's industrial personal property was erroneous.

For the foregoing reasons, we conclude that the circuit court correctly found that the taxpayer in this case, Alcan, failed to prove by clear and convincing evidence that the Tax Commissioner's valuation of Alcan's industrial personal property was erroneous. Accordingly, the November 23, 2011,[10] order of the Circuit Court of Jackson County is hereby affirmed.

Affirmed.

**ISSUED:**    June 5, 2013

---

[9]*See supra* notes 4 & 5.

[10]*See* note 2, *supra*.

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II